In re REGAL CONSTRUCTION COMPANY, INC., Debtor.

REGAL CONSTRUCTION COMPANY, INC., Plaintiff,

v.

MEADE CONCRETE PIPE CO., Defendant.

Bankruptcy No. 79-1-1810.
Adv. No. 80-0027A.

United States Bankruptcy Court,
D. Maryland.

Feb. 18, 1983.

Emil Hirsch, Washington, D.C., for plaintiff/debtor.

Paul Nolan, Washington, D.C., for defendant.

## MEMORANDUM OF OPINION

PAUL MANNES, Bankruptcy Judge.

This matter is before the court upon the defendant's motion to dismiss the complaint. Defendant urges that the judgment entered in a prior action involving Regal's surety and defendant precludes the relitigation of Regal's claim here. The court finds this reasoning persuasive. Treating the instant motion as one for summary judgment, and finding no genuine issue of material fact, the court will set for its findings and conclusions and file its proposed judgment in favor of defendant. *See, Sooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840, 847 (3d Cir.1974).

## STATEMENT OF FACTS

The court will borrow liberally from both defendant's reply memorandum and the opinion of the District of Columbia Court of Appeals in the *Matter of Fidelity and Deposit Company of Maryland, Appellant v. District of Columbia, et al.,* No. 80–610, April 24, 1981, in order to set out the history of the case. Plaintiff, Regal Construction Company, Inc. (hereinafter referred to as "Regal"), filed a voluntary petition under Chapter 11 of the Bankruptcy Reform Act of 1978 on October 1, 1979. This was the first day that the new Bankruptcy Code was operative. On February 19, 1980, Regal instituted this adversary proceeding seeking to recover money damages from the defendant, Meade Concrete Pipe Co. (hereinafter referred to as "Meade") for an alleged breach of a contract entered into between them on May 11, 1977. Pursuant to the terms of that contract, Meade agree to manufacture for Regal certain concrete pipes prior to July 21, 1977. Regal alleges that it was understood that Meade would deliver District of Columbia Class V specification, 42 inch non-jacked pipe, on or about August 1, 1977, and Class V jacked pipe on or about the first week of September, 1977. Regal further alleges that Meade did not deliver the non-jacked pipe until September 23, 1977, and that it failed to deliver the jacked pipe at any time. As a result of that alleged breach, Regal contends that it suffered consequential damages in the amount of $85,000.00, which it seeks to recover in this adversary proceeding.

The present case is not the first in which Regal has asserted this claim for breach of contract against Meade. In 1978, the District of Columbia for the use of Meade Concrete Pipe Co. filed a civil suit in the Superior Court of the District of Columbia

naming as defendants Regal Construction Company, Inc., and its surety, Fidelity and Deposit Company of Maryland. That lawsuit sought to recover payment of monies due to Meade by Regal for concrete pipe. In response to that complaint, Regal filed a counterclaim against Meade for delay in delivery of Class V pipe suitable for jacking. Regal's counsel appeared on its behalf and behalf of the surety. Subsequent to the filing of its counterclaim, Regal filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Accordingly, under 11 U.S.C. § 362, Meade's claim against Regal in the District of Columbia Superior Court was stayed. Meade did not seek an order of this court lifting the stay. Regal did not proceed with its counterclaim, nor did it seek to have the stay lifted as to Meade's claim. In October, 1979, any party could have removed the District of Columbia action to this court after complying with Interim Bankruptcy rule 7004. Regal, as a party in interest, could have moved to terminate the stay of 11 U.S.C. § 362 had it desired to participate in its own right in the District of Columbia action. 11 U.S.C. § 1109.

Contrary to the conclusion set out in the Louis R. Cecchini affidavit filed by Regal ("[s]ince Regal could not prosecute its counterclaim against Meade, during the duration of the stay . . . ."), the Meade litigation was not stayed as to Regal's counterclaim. It chose not to proceed, and its counsel withdrew not to reappear until his representation of the surety in the appeal.[1]

The case proceeded to trial solely upon the complaint against Regal's surety. After a non-jury trial, Judge William E. Stewart of the Superior Court of the District of Columbia entered judgment in favor of Meade on May 6, 1980, for the full amount claimed by Meade as damages. Judge Stewart specifically held that the defendant in that case was not entitled to an offset by reason of delay alleged to have been caused by Regal. Regal's surety appealed this judgment to the District of Columbia Court of Appeals, which court affirmed Judge Stewart's decision. Judge Stewart found specifically that the delay in the delivery of the Class V pipe by Meade did not cause Regal to incur any damage and that Meade did not refuse to deliver the jacked pipe. The abandoned counterclaim filed in Superior Court and Regal's complaint filed here present substantially the same issues. Those same issues were presented to and decided by Judge Stewart in the District of Columbia action in his rejection of the surety's defense.

QUESTION PRESENTED

The question presented is the effect to be given to the prior District of Columbia action. Meade contends that because the surety, Fidelity and Deposit Company of Maryland (herein referred to as "Fidelity" or the "surety"), had the same interests as Regal, both in defending the claim made by Meade and in prosecuting the counterclaim as a set off against Meade, and because Regal is a privy of Fidelity, the judgment against its surety is binding upon Regal in the instant proceeding.

As stated by Meade:

"When a court of competent jurisdiction enters a final judgment on the merits with respect to a claim, that judgment is binding not only upon the parties, but also upon those in privity with the parties. *Eugast [Ugast] v. LaFontaine,* 189 Md. 227, 230 [55 A.2d 705] (1947). There is no dispute that the District of Columbia Superior Court had jurisdiction over the Counterclaim pressed by Regal's surety and that the final judgment in that case was a final judgment on the merits of that claim. Although technically Regal was not a party to that judgment, it shared an identity of interest with its surety to such an extent that Regal was a privity of its surety. As the Maryland

---

1. Regal and Fidelity shared the same counsel until Regal withdrew together with its lawyer from the Superior Court action. The surety then retained new counsel for the trial. On appeal, the surety retained the former joint counsel. Meade points out that had the interests of Regal and its surety been adverse, Rule 5–105 of the Code of Professional Responsibility would have barred counsel from representing both parties.

Court of Appeals observed in *Eugast [Ugast] v. LaFontaine, supra,* a person is a privy with another if his interests are so represented by that other person as to receive actual and efficient protection in the prior litigation. *Id.* at p. 233 [55 A.2d 705]."

In its memoranda in opposition to the motion to dismiss, Regal urges:

1. Meade did not meet its burden to show that Regal's claims are barred by collateral estoppel or *res judicata;*

2. Regal, not being in privity with the surety, collateral estoppel and *res judicata* cannot apply;

3. The application of *res judicata* or collateral estoppel to this action is contrary to the policies underlying the automatic stay of 11 U.S.C. § 362.

The final point must be examined in the light of the facts of this case and not as an independent proposition of law. After the filing of the Chapter 11 petition and prior to the trial of the District of Columbia action between Regal's surety and Meade, Regal filed this proceeding. In short, Regal availed itself of the stay and then filed its action against Meade. Its employees participated in the District of Columbia trial. Had its surety been successful, Regal need go no further. When its surety lost, Regal claimed "it was deprived of a full and fair opportunity to be heard on any issues in the District of Columbia suit."

If Regal sustained any injury from remaining on the sidelines in the District of Columbia and filing this action instead, that injury was self-inflicted. The statements of absence of fundamental fairness and countervailing policy are hollow in the mouth of Regal. It could have litigated all issues in one of two forums. When it withdrew to measure the result obtained by its surety and refile its own action cloaked in the protection of this court, it ran the risk of precisely what took place in this matter.

■ The automatic stay of 11 U.S.C. § 362 did not preclude Regal from proceeding on its counterclaim in the District of Columbia. "Section 362 by its terms stays

proceedings *against* the debtor. The statute does not address actions brought *by* the debtor which would inure to the benefit of the bankruptcy estate." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel,* 682 F.2d 446, 448 (3d Cir.1982). This court expressly declines to follow the holding of *In Re Critical Fork Coal Corp.,* 18 B.R. 422 (Bkrtcy.W.D.Va.1982), § 362 compelling the opposite result.

■ The issues of *res judicata* and collateral estoppel remain to be considered. Regal urges that this court cannot pass upon those issues without the full trial record. The memorandum opinion and judgment of the District of Columbia Court of Appeals show clearly what matters were in fact litigated and determined in that action. *See Thomas v. Consolidation Coal Co.,* 380 F.2d 69, 80 (4th Cir.1967). Regal's complaint charges:

"4. Pursuant to the above referenced contract, it was understood and agreed Defendant would deliver District of Columbia Class V Specification 42 Inch nonjacked pipe on or about August 1, 1977, and Class V jacked pipe on or about the first week in September, 1977.

5. Defendant did not commence delivery of the non-jacked pipe until September 23, 1977, and failed to deliver the jacked pipe at any time.

6. As a result of the foregoing, Plaintiff was unable to comply with the provisions of its agreement for the laying of said pipe, ground conditions became extremely unstable due to weather causing Plaintiff to incur unnecessary costs in laying pipe, such as additional labor charges, equipment costs and operating expenses, Plaintiff was required to purchase pipe which Defendant failed to deliver at considerable expense in excess of that which Plaintiff would have paid Defendant, and Plaintiff has otherwise been damaged in the sum of $85,000.00."

The District of Columbia Court of Appeals discusses the disposition of both of the alleged breaches of contract:

"The trial court, in an oral opinion from the bench, found for Meade. The court concluded that the delay in delivery of the class five pipe did not cause Regal to incur any damage because the elliptical pipe (the pipe to be installed before the class five), which was provided by another company, was not ready for delivery until September 1. The court further concluded that according to the evidence, Meade did not breach its contract by refusing to supply class five pipe of a particular type."

Meade has one remaining hurdle. All of the well travelled roads of collateral estoppel and *res judicata* require for such issue and claim preclusion that the parties involved be the same. *See generally, Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940); *White v. World Finance of Meridian,* 653 F.2d 147 (5th Cir. 1981); *United States v. Truckee-Carson Irrigation District, State of Nevada,* 649 F.2d 1286, 1289, 1302 (fn. 11: Under the doctrine of res judicata [or "claim preclusion"] a judgment on the merits in a prior action involving the same parties or their privies bars a second action based on the same cause of action. The bar applies not only to matters that were actually litigated but also to all claims that might have been litigated. In contrast, collateral estoppel [or "issue preclusion"] precludes a second litigation only of issues that were actually litigated.) (9th Cir.1981). Since Regal invited itself out of the prior trial, it may only be bound by that litigation if it was in privity with its surety. The concept of privity "simply represents a conclusion that a person is so closely connected to a party that with respect to the issues in litigation the person's interests are essentially the same as those litigated interests of the party." *United States v. Truckee-Carson, etc., supra* at 1303 *citing Jefferson School of Social Science v. Subversive Activities Control Board,* 331 F.2d 76, 83 (D.C.Cir.1963). Here the surety's interest was co-extensive with Regal's. Under D.C.Code § 13–503, it had the right to assert all of the defenses open to Regal. The court concludes that the relationship between the surety and Re-

gal was so close that Regal would be fairly bound by the trial result. There was no divergence of interest whatsoever. Whatever money the surety could save inured to the benefit of Regal as well. There were none of the "dual and potentially conflicting interests" or the failure "to insure the full and fair consideration of the common issue" or the "fraudulent and collusive sacrifice of the rights of absent parties" condemned by Mr. Justice Stone for the Court in *Hansberry v. Lee, supra.*

CONCLUSION

Regal's interests were so closely aligned with those of its surety that it was fairly represented. It should be bound by the judgment. *Vulcan, Inc. v. Fordees Corp.,* 658 F.2d 1106, 1109–1111 (6th Cir.1981). Aside from a bald allegation in the November 18, 1982, Cecchini affidavit that counsel did not assert a claim for regrouting pipe joints and that Regal was dissatisfied with the manner that the defense was handled, there is nothing in this record to support a contrary conclusion. As this is a "related proceeding" under Emergency Rule 51–A, an order will be proposed granting summary judgment for the defendant.