MERCHANTS & FARMERS BANK OF DUMAS, ARKANSAS, Plaintiff,

v.

Jamir R. HILL, Sr., et al., Defendants.

MERCHANTS & FARMERS BANK OF DUMAS, ARKANSAS, Cross–Complainant,

v.

UNITED STATES of America, acting through the FARMERS HOME ADMINISTRATION, Cross–Defendant.

No. PB–C–90–335.

United States District Court, E.D. Arkansas, Pine Bluff Division.

Dec. 21, 1990.

William A. Waddell, Jr., Friday, Eldredge & Clark, Little Rock, Ark., and Brooks A. Gill, Gill, Johnson & Gill, Dumas, Ark., for plaintiff.

Marjorie M. Kesl, Arens & Alexander, Fayetteville, Ark., and William C. Adair, Jr., U.S. Attorney's Office, Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

This is a suit by Merchants & Farmers Bank of Dumas, Arkansas ("the Bank") to foreclose on certain property held by the Defendants, Jamir and Bonnie Hill and others, for default on a loan. The Hills filed a counterclaim against the Bank, asserting various theories of lender liability. By Order dated November 26, 1990, the Court granted in part the Bank's motion for summary judgment on all lender liability claims except those arising in contract.

Two days before trial, the Hills filed a voluntary petition for bankruptcy under Chapter 12 of the Bankruptcy Code. Counsel for the Hills sent a facsimile copy of the notice of bankruptcy stay to the district clerk's office in Pine Bluff, which was placed in the case file. The following day, counsel submitted by facsimile a motion to remove the trial of the counterclaim from the docket and to refer counterclaim to the bankruptcy court. When informed that the Court had denied her motion and the case remained on the trial schedule for the next morning, counsel for the Hills indicated that she would appear for a hearing on the

motion, but would not proceed to trial on the counterclaim.

Because counsel for the Hills persisted in her refusal to try the counterclaim, and because of the legal questions involved in deciding whether to remove the counterclaim from the Court's docket and refer it to bankruptcy court, the Court permitted the parties to argue the motion in order to make their record at a hearing on Wednesday morning, December 5, 1990. At the hearing, counsel for the Bank, who was ready to proceed to trial, moved to dismiss the counterclaim with prejudice. For the reasons set forth below, the Court hereby denies the Hills' motion to remove and refer, and grants the Bank's motion to dismiss with prejudice.

## I. MOTION TO REFER TO BANKRUPTCY COURT

[1] A threshold issue is whether proceedings on the Hills' counterclaim are automatically stayed under 11 U.S.C. § 362(a)(1).[1] The statutory language, which refers to actions "against the debtor," and the policy behind the statute, which is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors, see H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Admin. News 5787, indicate that section 362 operates only to stay proceedings against the debtor, and not actions brought by the debtor prior to the bankruptcy petition which inure to the benefit of the estate.[2]

Although the Eighth Circuit has not yet decided this question, several other circuits have concluded that the automatic stay is inapplicable to actions originally commenced by the bankrupt party. *Carley Capital Group v. Fireman's Fund Insurance Co.*, 889 F.2d 1126, 1127 (D.C.Cir. 1989); *Martin–Trigona v. Champion Federal Savings and Loan Ass'n*, 892 F.2d 575 (7th Cir.1989); *In re Berry Estates*, 812 F.2d 67, 71 (2d Cir.1987); *Freeman v. Commissioner of Internal Revenue*, 799 F.2d 1091, 1092–93 (5th Cir.1986); *Cathey v. Johns–Manville Sales Corporation*, 711 F.2d 60, 61 (6th Cir.1983); *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982).

At least three district courts have reached the same conclusion. *In re Transportation Systems International*, 110 B.R. 888 (D.Minn.1990); *Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12 (N.D.Cal.1989); *Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.*, 49 B.R. 360 (S.D.Fla.1985). A slew of bankruptcy court decisions concur, see, e.g., *In re Convention Masters, Inc.*, 46 B.R. 339 (Bkrtcy.D. Md.1985), *In re Regal Construction Company*, 28 B.R. 413 (Bkrtcy.D.Md.1983); *In re Ideal Roofing and Sheet Metal Works, Inc.*, 9 B.R. 2 (Bkrtcy.S.D.Fla.1980), as well as several state court opinions, see, e.g., *Scarborough v. Duke*, 532 So.2d 361, 363 (La.Ct.App.1988), *Steeley v. Dunivant*, 522 So.2d 299, 300 (Ala.Civ.App.1988), *Emerson v. A.E. Hotels*, 403 A.2d 1192, 1194 (Me.1979).

The Hills equivocate on whether the automatic stay under section 362 is applicable

---

1. The automatic stay provision of the Bankruptcy Code provides:
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entries, of—
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1) (emphasis added).

2. Nor does section 362(a)(3), which stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," act as a bar to the continuation of an action brought by the debtor. For example, in order for section 362(a)(3) to mandate a stay on the counterclaim in the present action, the Bank must be trying to obtain possession of property of the debtor or must be trying to exercise control over the property of the estate. This simply is not the case here.

to their counterclaim.[3] Any such claim would be too wobbly to withstand the prevailing winds of the aforementioned authority. However, the Hills further argue that for various reasons, as discussed below, they were barred from trying their counterclaim on December 5, 1990, and they request that the Court transfer the counterclaim to bankruptcy court. Each of these arguments will be addressed in turn.

### A. Standing to Pursue the Counterclaim Individually

■ The Hills claim that pursuant to 11 U.S.C. §§ 1203 and 1207 they have become debtors-in-possession of all property of the estate and, therefore, they no longer had standing individually to pursue the counterclaim at the trial scheduled for December 5, 1990.[4] Relying on *In re Ozark Restaurant Equipment Company, Inc.*, 816 F.2d 1222 (8th Cir.), *cert. denied sub nom., Jacoway v. Anderson*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) and *In re Couch*, 43 B.R. 56 (Bankr.E.D.Ark.1984), they reason that upon the commencement of the bankruptcy action, their counterclaim became an asset of the bankruptcy estate created under 11 U.S.C. § 541, and *only* the debtors in possession have authority to pursue those causes of action belonging to the debtors as of the commencement of the bankruptcy proceedings.

Section 1203 provides that a debtor in possession shall have essentially all the rights and powers of bankruptcy trustee.[5] A debtor in possession therefore wears two hats: one as an individual debtor, and the other as a trustee. Simply because the Hills have assumed the status of debtors in possession does not mean that their status individually as debtors is destroyed, any more than if a separate trustee was appointed for their estate. The first question in this case, therefore, involves whether the Hills, as *individual* debtors, could have proceeded to trial on their counterclaim against the Bank.

It is undisputed that causes of action[6] belonging to the debtor at the commencement of the bankruptcy action are included within the property of the estate. *Ozark Equipment*, 816 F.2d at 1225. *See also* 11 U.S.C. § 541(a)(1) (property of the estate comprises the "legal and equitable interests of the debtor"). Accordingly, the trustee in bankruptcy has authority to pursue these causes of action for the benefit of the estate. *Id.* At least two courts have held that because the trustee in bankruptcy "owns" the causes of action, *only* the trustee has standing to bring suit on them after the filing of the bankruptcy petition. *Folz v. BancOhio National Bank*, 88 B.R. 149 (S.D.Ohio 1987); *Jefferson v. Mississippi Gulf Coast YMCA, Inc.*, 73 B.R. 179 (S.D.Miss.1986).

However, it is not a necessary consequence of the trustee's having title to the causes of action that the debtor has lost all authority to proceed in an action instituted by him *prior* to the commencement of bankruptcy proceedings. As the several cases cited above indicate, the debtor may continue to prosecute an action initiated before the bankruptcy case supervened,

---

**3.** The Hills initially attempted to postpone the trial by sending a notice of stay to the district clerk's office on Monday, December 3, 1990. In their motion to remove and refer, they allege in paragraph 5 that "they are entitled to the protection of 11 U.S.C. § 362." However, in their brief in support of the motion, they concede that "the automatic stay provision of § 362 may not literally prohibit the continuation of the Hills counterclaims." Def.Mem. at 4. Nor did counsel for the Hills argue at the hearing on the motion that proceedings on the counterclaim were stayed under section 362.

**4.** The Hills do not explain how they have standing to make and argue their motion to refer if, as they assert, they do not have standing to proceed in this case.

**5.** 11 U.S.C. § 1203 states:
Subject to such limitations as the court may prescribe, a debtor in possession shall have all the rights, other than the right to compensation under section 330, and powers, and shall perform all the functions and duties, except the duties specified in paragraphs (3) and (4) of section 1106(a), of a trustee serving in a case under chapter 11, including operating the debtor's farm.

**6.** A "cause of action" is generally understood to be a situation or state of facts which give a person a right to seek a judicial remedy in his behalf; in short, the right to institute judicial proceedings. *See Rhodes v. Jones*, 351 F.2d 884, 886 (8th Cir.1965), *cert. denied*, 383 U.S. 919, 86 S.Ct. 914, 15 L.Ed.2d 673 (1966).

and this is so notwithstanding that the title to the claim which the action seeks to enforce becomes vested in the trustee in bankruptcy.

With respect to the trustee's authority to dispose of actions filed prior to the bankruptcy petition, the United States Supreme Court stated in *Meyer v. Fleming* that

[l]itigation instituted by a creditor may not be defeated merely by reason of the fact that he has become a bankrupt. Title to the claim vests, of course, in the bankruptcy trustee. He is in position to take control of the litigation. He may ... start a new suit and cause the old one to be abated, or intervene in the old one and obtain such benefits as it affords. The choice may indeed be a valuable one. Rights might be lost if the earlier suit were abated. And the speculative nature of the litigation or the expense involved might indicate to the trustee that it was more provident for him not to intervene in the existing suit, nor to institute a new one, but to let the one which had been started to run its course.

327 U.S. 161, 165, 66 S.Ct. 382, 385, 90 L.Ed. 595 (1946) (citations and footnotes omitted). However, the Court also observed that, "[i]f, because of the disproportionate expense, or uncertainty as to the result, the trustee neither sues nor intervenes, *there is no reason why the bankrupt himself should not continue the litigation.*" *Id.* at 166, 66 S.Ct. at 385 (quoting *Johnson v. Collier,* 222 U.S. 538, 540, 32 S.Ct. 104, 105, 56 L.Ed. 306 (1912)) (emphasis added).[7]

Bankruptcy Rule 6009 gives the trustee or debtor in possession the discretionary authority to continue a pending action brought by the debtor prior to the commencement of the bankruptcy case:

With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

While the trustee or debtor in possession may intervene and assume control of the suit if he wishes, Rule 6009 does not oust the debtor as a party to the action, nor does it deny the debtor his standing to proceed with the action if the trustee or debtor in possession takes no action.

The Hills have cited no cases which hold that the trustee or debtor in possession has *exclusive* standing or authority to proceed with pending prepetition actions which inure to the benefit of the estate.[8] If, for whatever reason, the Hills as debtors in possession chose not to intervene, the Hills individually still had standing to pursue the counterclaim.

## B. The Need for Bankruptcy Court Approval

 The Hills further argue that they could not proceed individually on the counterclaim because any explicit or implicit contract with their attorneys would be executory as to the future course of the suit and therefore, pursuant to 11 U.S.C. § 365, must be assumed or rejected by the Hills as debtors in possession—an act which requires bankruptcy court approval.[9] They suggest that in a chapter 12 proceeding

---

7. Although *Meyer* was decided under the Bankruptcy Act, decisions under the Code have confirmed its holdings. *See, e.g., In re Wilson,* 94 B.R. 886 (Bankr.E.D.Va.1989) (trustee may abandon debtor's proposed civil claim and permit debtor to bring action if abandonment is not arbitrary or capricious and is in best interest of estate); *In re Jefferson,* 59 B.R. 707 (Bankr.S.D.Miss.), *aff'd,* 73 B.R. 179 (S.D.Miss. 1986) (bankruptcy trustee not bound to pursue every cause of action); *In re Mid America Broadcasting of Topeka, Inc.,* 45 B.R. 507 (Bankr.D.Kan.1984) (trustee has broad powers with respect to an action belonging to estate).

8. *In re Ozark Restaurant Equipment Co., Inc.* and *In re Couch* both involved debtors who tried to assert *postpetition* claims or counterclaims arising out of causes of action which were property of the bankruptcy estates. They do not address the question of whether a debtor may continue to prosecute a pending *prepetition* claim or counterclaim.

9. 11 U.S.C. § 365(a) states:
 Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

this approval generally is obtained upon the filing of the plan of reorganization.[10]

Nothing in section 365 requires *prior* approval of the bankruptcy court for the contract to be assumed. The language of the statute indicates only that an assumption is "subject to the court's approval." 11 U.S.C. § 365(a). Although court approval is mandatory, assumption may precede approval. *In re Avery Arnold Construction, Inc.*, 11 B.R. 34 (Bankr.S.D.Fla.1981). The Hills, therefore, as debtors in possession, conceivably could have assumed the contract and then gone to trial individually on the counterclaim.[11]

Neither a purported lack of standing nor the failure to secure prior bankruptcy court approval of a contract with their attorneys as to the future course of the case would have blocked the Hills from proceeding individually on the counterclaim on the scheduled trial date. However, as indicated above, this could occur only if the Hills, in their role as debtors in possession, had been unwilling or unable to try the counterclaim.

The next question then is whether the Hills as debtors in possession could have proceeded to trial on the counterclaim on December 5, 1990. They offer two arguments why they could not. First, they claim that 11 U.S.C. § 327 prohibits them, as debtors in possession, from employing attorneys without bankruptcy court approval. Accordingly, they were unable to proceed as debtors in possession since the attorneys presently representing them in their individual capacity had no authority to try the counterclaim on behalf of the bankruptcy estate. Second, they contend that if they had proceeded on the counterclaim as debtors in possession without prior bankruptcy court approval, it would have required them to incur debt in violation of 11 U.S.C. § 364(b).

The restrictions of 11 U.S.C. § 327(a),[12] which expressly require court approval of employment of legal counsel, apply to debtors in possession as well as to trustees. *In re Martin*, 817 F.2d 175, 177 n. 1 (1st Cir.1987). However, these restrictions are not absolute. Under certain circumstances, the bankruptcy court has discretion within its equity powers to enter an order nunc pro tunc authorizing employment of a professional under section 327. *In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1289 (5th Cir.1983); *In re Ewing*, 54 B.R. 952, 954–55 (D.Col.1985); *In re McDaniels*, 86 B.R. 128, 130–34 (Bankr.S.D.Ohio 1988). Such retroactive appointment will be approved if the court (1) can find that the applicant satisfies the disinterestedness requirements of section 327 and would therefore have been approved initially, and (2) can determine, in the exercise of its discretion, that the particular circumstances presented are so extraordinary as to warrant retroactive approval. *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99 (3d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988).

Considering the circumstances of the present case, if the Hills as debtors in possession had tried the counterclaim, which they are allowed to do with or without court approval under Rule 6009, it is unlikely that the bankruptcy court would

---

10. 11 U.S.C. § 1222 sets forth the contents of the reorganization plan. It states that the plan may "(6) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." *Id.* § 1222(b)(6).

11. To fall within the ambit of section 365, the contract must be one on which performance remains due to some extent on both sides. *In re Sugar Refining Company*, 26 B.R. 765 (Bankr.S.D.N.Y.1983); *In re Pennsylvania Tire Company*, 26 B.R. 663 (Bankr.N.D.Ohio 1982). A contract is not executory if performance on one side is completed with performance yet remaining due

on the other side. *In re Waldron*, 36 B.R. 633, 637 (Bankr.S.D.Fla.1984), *rev'd on other grounds*, 785 F.2d 936 (11th Cir.1986). There is no evidence in the record concerning the fee arrangement between the Hills and their present attorneys, specifically whether the Hills still owe or will owe their attorneys for services rendered in connection to their counterclaim.

12. 11 U.S.C. § 327(a) states:
 Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

refuse to approve retroactively the employment of their present attorneys to represent them in the matter. The Hills' attorneys are competent and experienced in this type of litigation. They have been involved in this case from its inception—they filed the counterclaim, conducted extensive discovery, submitted several pleadings, including a lengthy response to the Bank's motion for summary judgment, and, by their own admission, were ready to try the counterclaim on December 5, 1990.[13] By representing the Hills as debtors in possession seeking to recover on the counterclaim, these attorneys would have rendered a valuable service in order to benefit the estate. Since the attorneys purportedly had completed their work save conducting a one-day trial, it is unlikely that the additional expense incurred in proceeding would prejudice creditors, especially given the possibility of significant benefit to the estate.

The failure to seek prior court approval would have been due to the extremely short period of time between the filing of the bankruptcy petition and the scheduled trial, and not because of any inadvertence or neglect on the part of the attorneys. Bankruptcy courts may grant approval nunc pro tunc under such circumstances. *See, e.g., In re Crest Mirror & Door Company, Inc.,* 57 B.R. 830 (Bankr. 9th Cir.Cal. 1986); *In re Diamond Mortgage Corporation, Inc.,* 77 B.R. 597 (Bankr.E.D.Mich. 1987); *In re Kero–Sun, Inc.,* 44 B.R. 121 (Bankr.D.C.Conn.1984).

In support of their section 364(b) argument,[14] the Hills rely on *In re Critical Fork Coal Company,* 18 B.R. 422 (Bankr. W.D.Va.1982), which held that costs incurred by the bankrupt in a lawsuit he prosecutes after entering bankruptcy are post-petition debt and hence require the permission of the bankruptcy court to incur; from which the court concluded that there can be no further proceedings in the case—in other words it must be stayed—without judicial authorization. However, several courts have expressly declined to follow the *Critical Fork* rule, including the Seventh Circuit which indicated in an opinion by Judge Posner that "[w]e disagree with this chain of reasoning at various points." *Martin–Trigona v. Champion Federal Savings and Loan Association,* 892 F.2d 575, 578 (7th Cir.1989). *See, e.g., In re Convention Masters, Inc.,* 46 B.R. 339, 340–41 (Bankr.D.Md.1985); *In re Regal Construction Company, Inc.,* 28 B.R. 413, 416 (Bankr.D.Md.1983). Moreover, legal services do not constitute new credit within the meaning of section 364, even though a debt is created subsequent to the petition which will be paid by the estate. *In re Martin,* 62 B.R. 943, 948 n. 10 (D.Me. 1986), *aff'g* 59 B.R. 140, 144 (Bankr.D.Me. 1986), *vacated on other grounds,* 817 F.2d 175 (1st Cir.1987); *In re Roamer Linen Supply, Inc.,* 30 B.R. 932, 935 (Bankr.S.D. N.Y.1983).

■ The filing of bankruptcy did not temporarily bar the Hills from trying the counterclaim as scheduled because certain administrative procedures under sections 327, 364, and 365 needed to be taken care of in the bankruptcy proceedings. Insisting that the Hills must jump through these hoops before they can proceed on the counterclaim wreaks havoc with the language of Bankruptcy Rule 6009, which expressly permits a debtor in possession to prosecute any pending action by the debtor *without* court approval. To say that Rule 6009 gives a debtor in possession authority to proceed in a pending action without court approval, and then to require him to get court approval before hiring attorneys or incurring any legal expenses is utterly inconsonant. The better view is that Rule 6009 implicitly authorizes a debtor in possession to retain counsel and make reasonable expenditures in pursuing litigation assumed under the rule.

### C. Time to Decide

The Hills next argue that they need time to decide whether it is in the best interest

---

**13.** At the hearing on the motion to refer, Ms. Karen Pope, counsel for the Hills, strongly rebuffed the suggestion by opposing counsel that she and her colleagues were ill-prepared to try the counterclaim.

**14.** Section 364(b) prohibits the trustee from incurring unsecured debt except in the ordinary course of business without prior court approval.

of the bankruptcy estate to pursue the pending action. While they concede that the automatic stay provision of section 362 is inapplicable to this case, they appeal to the underlying purpose of the stay in support of this argument. They claim that allowing the Bank to "pressure the debtors in possession into proceeding to trial on the counterclaim" would divert their efforts from formulating a reorganization plan.

The purpose of the automatic stay is to give the debtor a breathing spell from creditors and to avert a race by the creditors to the debtor's assets. *Hazen First State Bank v. Speight*, 888 F.2d 574, 576 n. 4 (8th Cir.1989). It is designed to prevent creditor coercion and harassment of the debtor, *In re Sechuan City, Inc.*, 96 B.R. 37 (Bankr.E.D.Pa.1989), and to shield the debtor from financial pressure during the bankruptcy proceeding, *In re Stringer*, 847 F.2d 549 (9th Cir.1988). However, the provision of the automatic stay, as well as its underlying rationale, is inapplicable to suits *by* a debtor. When the tables are turned and it is the *debtor* who is asserting the claim, the policy concerns supporting the stay are no longer relevant. The protections for the debtor under the Bankruptcy Code operate as a shield, not a sword.

The Hills want the best of both worlds. They wish to continue holding the threat of liability on the counterclaim over the Bank's head without feeling any pressure to go to trial. However, since the Bank's foreclosure action is stayed under section 362, the remaining dispute is over a claim that they *themselves* have raised. Any stress or distraction they may experience because of the counterclaim is a part of the usual burden that comes with bringing a legal demand against someone else. Unlike creditor claims, if their disquietude becomes too great, the Hills have it within their power to seek a voluntary dismissal of the counterclaim.

■ The Hills' strongest contention is that they need more time to determine whether it is in the best interest of the bankruptcy estate to continue the pending action. When asked at the hearing why pursuing the counterclaim would *not* be in the best interest of the estate, counsel for the Hills suggested that a delay might work to the Hills' benefit in settlement negotiations, that the cost of proceeding might not be in the best interests of the creditors, and that pursuing the counterclaim would create additional stress on the Hills who are now in bankruptcy proceedings.

Delaying trial on the counterclaim to gain a tactical advantage in settlement negotiations is insufficiently related to the commencement of bankruptcy proceedings, and the necessary considerations therein, to justify giving the Hills additional time. If they have filed bankruptcy simply to get a continuance of the trial date so that they may continue to use the counterclaim as a bargaining chip, they are abusing the bankruptcy process—something this Court will not permit.

Ordinarily, allowing additional time to determine whether the cost of proceeding would not be detrimental to the creditors would be appropriate, especially in the case of a freshly-appointed trustee unfamiliar with both the counterclaim and the assets and liabilities of the estate. However, in the present case, the Hills are already familiar with the assets and liabilities of the estate, their attorneys have expended much time, effort, and money in preparing for trial, and they all are well aware of the potential for recovery on the counterclaim. Since the bankruptcy petition was filed on the eve of trial, most of the costs in bringing the counterclaim to trial already have been incurred. Any additional assets of the estate they might have depleted by spending a day trying the case are too trivial a concern to defeat the rights of the Bank to proceed with their defense in a timely fashion.

Conceivably the potential for recovery on the counterclaim might be so small that to proceed would waste assets belonging to the estate. However, if counsel for the Hills was correct in stating that they stood prepared to go to trial, they are already in the position to make this judgment call. They have failed to demonstrate how a delay would permit them to acquire addi-

tional information material to a decision whether to proceed. If the decision was too difficult, they could have sought the Court's permission to dismiss the claim and, if granted, refiled it at a later date.

### D. Jurisdiction and Judicial Economy

[9] The Hills also argue that under 28 U.S.C. § 1334(d) and Rule 32 of the Local Rules of the District Courts for the Eastern and Western Districts of Arkansas, the bankruptcy court has exclusive jurisdiction of the property of the bankruptcy estate and of property of the debtor as of the commencement of the bankruptcy case; therefore, the pending cause of action, as property of the bankruptcy estate, is within the exclusive jurisdiction of the bankruptcy court.

This argument is based on a misreading of the jurisdictional grants. Section 1334(d) provides that

[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

28 U.S.C. § 1334(d). The widely accepted view is that section 1334(d) was intended to emphasize the end of the distinction between plenary and summary jurisdiction, and to establish both in personam and in rem jurisdiction, rather than to establish exclusivity over bankruptcy matters in the reorganization court. *In re Continental Air Lines, Inc.*, 61 B.R. 758, 766 (S.D.Tex. 1986). Moreover, for the reasons set forth in *In re Yagow*, 53 B.R. 737 (Bankr.D.N.D. 1985), it is highly questionable whether the bankruptcy court had subject matter jurisdiction over the Hills' lender liability counterclaim, since it is permissive in nature and based on state contract law.

The Hills finally assert that since the counterclaim was asserted as a setoff against the Bank's foreclosure action, the bankruptcy court is the best forum in which to resolve this dispute. This argument must also be rejected. The Hills would have promoted judicial economy if they had tried their counterclaim as scheduled, rather than waiting until both parties were poised for trial, filing for bankruptcy, and then seeking to have the matter referred to bankruptcy court. Because of the extensive pleadings filed in this case pertaining to the counterclaim, this Court presently is far more familiar with the issues than the bankruptcy court. Therefore, much more time and expense would be required to refer this matter to the bankruptcy court, assuming it would even have jurisdiction to hear the counterclaim.

## II. THE MOTION TO DISMISS

The Hills correctly point out that neither Rule 6009 nor any other provision of the Bankruptcy Code required them to go forward with the counterclaim. However, there is also no rule that *prevented* them from trying the counterclaim as scheduled. The Hills *raised* these allegations against the Bank, they *could have proceeded* to trial on December 5, 1990 either as debtors or debtors in possession, but they *refused* to do so. Therefore, it is well within the Court's discretion to dismiss the counterclaim with prejudice for failure to go to trial as scheduled.

Perhaps a bit of history at this point would be helpful. This action was removed from the Chancery Court of Desha County, Arkansas, on June 22, 1990. On August 21, 1990, the Hills filed their counterclaim against the Bank and a third-party complaint against an unnamed third-party defendant.[15] Subsequent to the filing of the Bank's answer to the counterclaim, counsel for the Hills filed a pleading entitled "Counterclaim and Third–Party Complaint (Substitution for Pleading Filed 8/21/90 Changing *Only* Style and Pagination)" on

---

**15.** The counterclaim and third-party complaint did not specify the identity of third-party defendant in either the style of the case or in the body of the pleading. According to the clerk's minutes, one the Hills' attorneys, Ms. Marjorie Kesl, instructed the clerk to file the counterclaim and third-party complaint as submitted. She indicated that she would file an amended pleading to correct the style to show Mr. Loral M. Adcock as the third-party defendant. Mr. Adcock was identified as one of the officers of the Bank in the counterclaim and third-party complaint.

October 9, 1990.[16] This pleading attempted to add Mr. Loral Adcock as the Third–Party Defendant and was filed without leave of the Court.

Shortly thereafter, counsel for the Hills telephoned a member of the staff of this Court and advised that the case would need to be continued since they had demanded trial by jury on the counterclaim. On inquiry, counsel stated that the jury demand was in the counterclaim which was first filed in August. This statement was accepted as fact, the case left on the trial calendar for December 3, but moved to the jury docket and an Order to this effect was entered on October 11, 1990.

Upon subsequent review of the file, no jury demand was discovered in either the original or "substituted" counterclaims, as represented by counsel for the Hills. Instead, the first jury demand was made by separate pleading filed on October 9, 1990 and signed by the attorney who had represented to the Court that a jury demand had previously been made in the counterclaim. Consequently, this Court issued an Order filed on November 14, 1990 granting the Bank's motions to strike and dismiss the substituted counterclaim and to strike the demand for a jury trial which is untimely filed.

On October 16, 1990, the Bank filed a motion for summary judgment on the counterclaim. The Court granted partial summary judgment as to the issues of breach of fiduciary duty, breach of duty of good faith and fair dealing, outrage, economic coercion and duress, and misrepresentation and fraud. The only issue remaining for trial on the counterclaim was the question of liability in contract.

Trial was scheduled for the week of December 3, 1990 in the Pine Bluff Division.[17] On Monday, December 3rd, at 2:21 p.m., the Hills filed a voluntary petition for bankruptcy under Chapter 12 of the Bankruptcy Code. Shortly after 3:00 p.m., counsel for the Hills sent a facsimile copy of the notice of bankruptcy stay to the district clerk's office in Pine Bluff, which was placed in the case file. Counsel submitted by facsimile a motion to remove the trial of the counterclaim from the docket and to refer counterclaim to the bankruptcy court at approximately 4:20 p.m. the following day, Tuesday, December 4, 1990.[18] When informed that the Court had denied her motion and the case remained on the trial schedule for the next morning, counsel for the Hills indicated that she would appear for a hearing on the motion, but would not proceed to trial on the counterclaim.[19]

The power to dismiss under Rule 41(b) for failure to prosecute or obey a court order is an inherent aspect of the court's authority to enforce its orders and insure prompt disposition of lawsuits. *Goforth v. Owens*, 766 F.2d 1533 (11th Cir.1985). Although dismissal with prejudice under Rule 41(b) is a severe sanction, it may be war-

---

**16.** The clerk's minutes for October 4, 1990 indicate that Ms. Kesl called to ask whether she could send a substitution for the counterclaim and third-party complaint to change the style only. The deputy clerk advised her that a response had been filed and that she would need leave of the Court to add a third-party defendant. Ms. Kesl said that she only wanted to change the style to reflect Mr. Adcock as the third-party defendant. The deputy clerk then suggested that Ms. Kesl call the office of Court to determine if she must have leave to file the "substituted" pleading.

**17.** This case was scheduled to be tried upon the completion of an earlier case, which the Court heard on Monday and Tuesday of the week of December 3, 1990.

**18.** Absent a court order, the district clerk permits parties to submit pleadings by facsimile only on the final day for filing. The facsimiles must be replaced with the original pleadings the following working day. In the present case, counsel for the Hills filed the originals of the motion to remove and refer and supporting brief on Wednesday morning, December 5, 1990, immediately preceding the hearing on this motion.

**19.** The deputy in charge of the district clerk's Pine Bluff divisional office states in her clerk's minutes that:

Upon receipt of the motion to delay trial on counterclaim and refer it to bankruptcy court faxed to the office at approximately 4:20, I telephone [sic] Karen Pope [counsel for the Hills] to advise her [that] the Judge had denied the motion and that the case remained on the calendar for trial in the morning. Ms. Pope advised that she intended to be here for the "hearing on the motion" but that she would not proceed to trial.

ranted in cases of "willful disobedience of a court order or continued or persistent failure to prosecute a complaint." *Mullen v. Galati*, 843 F.2d 293, 294 (8th Cir.1988) (quoting *Givens v. A.H. Robins Co., Inc.*, 751 F.2d 261, 263 (8th Cir.1984)). A party's deliberate refusal to appear at trial and prosecute his counterclaim is grounds for dismissal for failure to prosecute. *See Syntex Ophthalmics, Inc. v. Novicky*, 795 F.2d 983 (Fed.Cir.1986) (dismissal authorized for intentional refusal to appear at trial and prosecute counterclaim); *Kern Oil and Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380 (9th Cir.), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987) (dismissal of counterclaim was not abuse of discretion where defendant, following denial of voluntary dismissal, refused to proceed with counterclaim before judge to whom case had been assigned).

The prior misrepresentations made to the Court by the Hills' attorneys, and the filing of bankruptcy on the eve of trial coupled with the stubborn refusal by counsel for the Hills to proceed on the counterclaim even when informed that the Court had denied her motion and the case would be tried as scheduled, suggest sufficient grounds for dismissal under Rule 41(b). This result, while harsh, is justified whether the Hills and their attorneys are using the delay in hopes of gaining a bargaining advantage in settlement negotiations, are somehow trying to get a jury trial on the counterclaim, or simply are putting off the day of reckoning on a meritless claim.

Whatever injury the Hills may suffer from failing to try the counterclaim is self-inflicted. There was no legal obstacle to litigating the counterclaim as scheduled. When they refused to go forward, they did so at their own peril. *See In re Regal Construction Co., Inc.*, 28 B.R. 413, 416 (Bankr.D.Md.1983). Accordingly, the Court finds that the Bank's motion to dismiss with prejudice should be and hereby is granted.

IT IS SO ORDERED.