Alvin DWIGGINS and Rebecca Dwiggins *v.*
ELK HORN BANK & TRUST COMPANY

04-1374                                        219 S.W.3d 181

Supreme Court of Arkansas
Opinion delivered December 8, 2005

*Timothy O. Dudley*, for appellants.

*Wright, Berry, Hugh & Moore*, by: *Rodney P. Moore*, for appellees.

DONALD L. CORBIN, Justice. Appellants Alvin and Rebecca Dwiggins appeal the order of the Clark County Circuit Court granting the motion for summary judgment filed by Appellee Elk Horn Bank and Trust Company. The Dwigginses also appeal the circuit court's order awarding insurance proceeds to the Bank. On appeal, the Dwigginses raise the following arguments: (1) the Hot Spring County Circuit Court erred in determining that venue was appropriate in Clark County and in transferring the case; (2) the Clark County Circuit Court erred in granting summary judgment on their claims for fraud and slander of title, because the proof submitted raised issues of fact warranting a jury trial; and (3) the Clark County Circuit Court erred in granting summary judgment on their claim for breach of contract and in awarding certain insurance proceeds to the Bank. The Bank has moved this court to dismiss the instant appeal, arguing that the Dwigginses failed to timely file a notice of appeal. As this appeal presents an issue of first impression regarding the application of the bankruptcy stay to this court's filing deadlines, this court has jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We agree with the Bank that the Dwigginses failed to timely file their notice of appeal and, thus, grant its motion to dismiss.

The present case stems from a loan transaction between the Dwigginses and the Bank. The Dwigginses borrowed $420,000.00 from the Bank, and on May 25, 2001, they secured the note with a mortgage on real property located in Clark County. The mortgage included the Dwigginses' residence and a peach orchard. A subsequent corrected mortgage listed the same property in its description. The Dwigginses later contacted the Bank and requested that it release the mortgage on their residence, so that they could use it as security for a loan with another financial institution. On May 13, 2002, the Bank executed a limited release that cleared the title on the Dwigginses' residence. Thereafter, the Dwigginses used the residence as security and were able to obtain another loan.

On or about January 9, 2002, a fire that resulted from the negligence of a third party caused damage to the Dwigginses' peach orchard. The Dwigginses negotiated a settlement with the negligent third party and obtained a check from the third party's insurance company in February 2003 for $135,000.

The Dwigginses had a payment due to the Bank on March 1, 2003, but they failed to make this payment. On March 24, 2003, the Dwigginses then filed suit against the Bank in Hot Spring County Circuit Court. In their complaint, the Dwigginses alleged that the Bank committed fraud in obtaining the mortgage on their residence and breached its duty of acting fairly and in good faith. They further alleged that the Bank slandered the title to their property through the mortgage on their residence because it was obtained through fraud. The Dwigginses averred that they sustained damages in the amount of $75,000 as a result of the Bank's conduct.

The Bank began foreclosure proceedings against the Dwigginses in Clark County Circuit Court on April 1, 2003.[1] The Bank then moved the Hot Spring County Circuit Court to transfer venue, arguing that Clark County was the proper venue, as the disputed property was located in Clark County, the Dwigginses resided in Clark County, and the Bank's headquarters were located in Clark County. The Hot Spring County Circuit Court determined that venue was appropriate in Clark County and granted the Bank's motion to transfer. Once the Dwigginses' suit was transferred to Clark County, the Bank filed a motion to consolidate the Dwigginses' action with the Bank's action for foreclosure. The Dwigginses did not object to the Bank's motion, and the two cases were subsequently consolidated.

On December 30, 2003, the Bank filed a motion for partial summary judgment, arguing that the trial court should award the $135,000 in insurance proceeds to it and dismiss the Dwigginses' claims for deceit, bad faith, and slander of title. In support of its motion, the Bank averred that there were no issues of material fact to be resolved and that it was entitled to summary

---

[1] The Bank filed an amended complaint for foreclosure adding Chambers Bank as an additional defendant, as Chambers was listed as a payee on the $135,000.00 insurance-proceeds check.

judgment as a matter of law. The Dwigginses responded that the proof submitted did raise issues of material fact and, thus, summary judgment was not appropriate.

In an order entered on April 12, 2004, the trial court granted the Bank's motion for partial summary judgment. In so doing, the court determined that the Dwigginses' claim for fraud centered on the Bank's alleged promise to them that their residence would not be mortgaged as security for the loan to them. According to the court, however, the deposition testimony in this case failed to demonstrate that the Bank made any statements regarding the status of the Dwigginses' residence. The court additionally determined that even if the Bank had made any such statement it would have been nothing more than a promise and not a representation that would serve as a basis for the tort of deceit. Because the Dwigginses failed to submit proof of an essential element of their claim for deceit, the trial court found that summary judgment was appropriate. The court further noted that the Dwigginses' deceit claim also rested on the allegation that the Bank obtained the mortgage on their residence by inducing them to sign a corrected mortgage. Again, the court determined that the Dwigginses failed to submit proof in support of this allegation in their response to the Bank's motion for summary judgment. The court further noted that the Bank submitted the original and corrected mortgages and that both included the Dwigginses' residence among the mortgaged properties.

As to their claim for slander of title, the court held that while the Dwigginses claimed that they were harmed by the Bank's mortgage on their residence because they were refused a loan for their 2001 crop, the Dwigginses failed to identify a particular lender, the date when they applied for such a loan, or the date when their application was denied. In short, according to the trial court, the Dwigginses submitted no proof to support this allegation once the Bank moved for summary judgment. Finally, the trial court determined that the Dwigginses submitted no proof of any type of damages that directly resulted from the Bank's alleged slander of title.

The court then addressed the Bank's motion with regard to the insurance proceeds and determined that the monies should be applied to the Dwigginses' principal indebtedness to the Bank. The trial court found that the controlling law on this issue was Arkansas' Uniform Commercial Code. The trial court then reasoned that the mortgage provision relied on by the Dwigginses

regarding the distribution of insurance proceeds was not controlling, because it was limited to insurance maintained by the mortgagors, not insurance maintained by third parties.

Once the trial court granted the Bank's motion for partial summary judgment, the only claim remaining to be resolved was the Bank's foreclosure action. On April 28, 2004, the Dwigginses entered into an Agreed Decree of Foreclosure. Thereafter, on April 28, 2004, the Dwigginses filed a Notice of Bankruptcy with the circuit court. No further action was taken in the circuit court until September 20, 2004, when the Dwigginses filed a notice of appeal from the trial court's April 12, 2004 order. On December 16, 2004, the Dwigginses then attempted to lodge the record with the Clerk of this court, but the Clerk refused to accept it on the basis that it was outside the allowable time period for the filing of a record. The Dwigginses subsequently filed a motion for rule on the clerk. This court conditionally granted the motion on December 22, 2004, and the parties were ordered to brief the timeliness issue and submit it with their briefs on the merits.

As a preliminary matter, this court must determine whether the present appeal is properly before us. The Bank has filed a motion to dismiss, arguing that the Dwigginses' notice of appeal was not timely filed and, thus, deprives this court of jurisdiction over the present appeal. According to the Bank, the Dwigginses' argument that the time in which they were required to file their notice of appeal was stayed by their filing for bankruptcy protection is without merit. Specifically, the Bank asserts that 11 U.S.C. § 362 (Supp. II 1978), which provides for an automatic stay, is not applicable in the present case, because the Dwigginses are appealing an order dismissing an action that they as debtors initiated against the Bank as a creditor. The Bank further avers that even if the bankruptcy stay is applicable, the Dwigginses failed to timely file their record because it was not filed within the time allowed under Ark. R. App. P. – Civ. (5)(b)(E)(2).

The Dwigginses respond that section 362 is applicable because once the circuit court consolidated their action with the Bank's foreclosure action, the case became one in which the Bank assumed the role as a creditor pursuing an action against them as debtors. The Dwigginses further aver that just as the time to file the notice of appeal was extended by the bankruptcy stay, so was the time to file the record. Thus, according to the Dwigginses, their filing of the record within ninety days of their filing of their notice of appeal was timely.

The key issue to be resolved in the instant action is whether or not the automatic stay provision of section 362 is applicable in this case, because if the stay is not applicable, then the Bank is correct in its assertion that the notice of appeal was not timely filed. Section 362 provides as follows:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entries, of —
>
>> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1) (emphasis added).

In *Merchants & Farmers Bank of Dumas, Ark. v. Hill,* 122 B.R. 539, 541 (E.D. Ark. 1990), the district court of Arkansas discussed the application of section 362 and stated:

> The statutory language, which refers to actions "against the debtor," and the policy behind the statute, which is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors, indicate that section 362 operates only to stay proceedings against the debtor, and not actions brought *by* the debtor prior to the bankruptcy petition which inure to the benefit of the estate. [Internal citations omitted.]

This case was subsequently relied on by this court when it addressed the application of the bankruptcy stay in *Pennington v. Harvest Foods, Inc.,* 326 Ark. 272, 929 S.W.2d 162 (1996). There, this court held that when the debtor is the appellant, a stay is required if the action was originally brought against the debtor. *See also Farley v. Henson,* 2 F.3d 273 (8th Cir. 1993); *Cathey v. Johns-Manville Sales Corp.,* 711 F.2d 60 (6th Cir. 1983). The court in *Pennington,* citing to *Hill,* 122 B.R. 539, further explained that when a debtor counterclaims against the plaintiff in initial proceedings, the counterclaim is not stayed by section 362, because the proceeding is not "against" the debtor. Noting that all of the

authority of which it was aware held that the initial proceedings, and not the appeal, constitute the reference point for determining whether the action is one "originally brought" against the debtor, the court held that Harvest Foods was not entitled to a stay of its appeal because it, as the debtor, was the party who originally brought the action. *See also Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446 (3d Cir. 1982) (holding that whether a case is subject to the automatic stay must be determined at its inception, and such a determination does not change depending on the particular stage of litigation at which the filing of the bankruptcy petition occurs).

This court's decision in *Pennington* is in accord with the great weight of authority, both in federal and state courts, holding that the automatic stay provision is not applicable in cases where the debtor is the party that originally brought the action. In *Carley Capital Group v. Fireman's Fund Ins. Co.*, 889 F.2d 1126 (D.C. Cir. 1989), the court, relying in part on the legislative objectives underlying the stay provision, held that section 362 clearly applies only in actions against the debtor and does not address actions brought by the debtor that would inure to the benefit of the bankruptcy estate. *See also Roberts v. Commissioner of Internal Revenue*, 175 F.3d 889 (11th Cir. 1999); *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575 (7th Cir. 1989); *Freeman v. Commissioner of Internal Revenue*, 799 F.2d 1091 (5th Cir. 1986).

One state court that has addressed this issue is California. In *Shah v. Glendale Fed. Bank*, 44 Cal. App. 4th 1371, 52 Cal. Rptr. 2d 417 (1996), the California Court of Appeals held that it was not precluded from disposing of an appeal where the debtor initiated the lawsuit in the lower court. Applying the rules of statutory construction enunciated by the United States Supreme Court in *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990), the court held that the language of section 362 was clear, and there was no doubt as to the legislative intent that the stay provision did not apply in cases where the debtor initiated the lower-court action. Extending this rationale, the California court held that an appeal that is a continuation of an action originally brought by the debtor is not subject to the automatic stay provision of section 362. *See also Scarborough v. Duke*, 532 So.2d 361 (La. Ct. App. 1988); and *Steeley v. Dunivant*, 522 So.2d 299 (Ala. Civ. App. 1988).

As demonstrated by our decision in *Pennington,* we agree with those courts that have held that section 362 is only

applicable to proceedings against the debtor, both in the lower court and on appeal. The only remaining issue to be resolved in determining the applicability of the bankruptcy stay in the instant appeal is what, if any, effect the order of consolidation had on the nature of the proceedings at issue here. As previously stated, the Bank asserts that this is not an action against the debtor, because the Dwigginses are appealing from an action that they originally initiated against the Bank. To the contrary, the Dwigginses argue that the present appeal is a continuation of an action against them, because once the trial court consolidated their suit with the Bank's foreclosure action, the case became one action against them by the Bank.

█ Consolidation of multiple actions is provided for in Ark. R. Civ. P. 42(a) when the actions involve a common question of law or fact pending before the court. Consolidation exists for convenience and economy in judicial administration. *Grayson v. Bank of Little Rock*, 334 Ark. 180, 971 S.W.2d 788 (1998); *Hunter v. McDaniel Bros. Constr. Co.*, 274 Ark. 178, 623 S.W.2d 196 (1981). This court has recognized that "[c]onsolidation of cases 'does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.' " *Knowlton v. Ward*, 318 Ark. 867, 879, 889 S.W.2d 721, 728 (1994) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933)). In *Johnson*, the United States Supreme Court held that consolidation of actions did not alter the nature of the attack. Thus, applying our holding in *Knowlton* and the Supreme Court's holding in *Johnson*, we cannot accept the Dwigginses' argument that the order of consolidation in this case somehow changed the procedural posture of their suit against the Bank. Simply put, the action which is the subject of this appeal was one initiated by the debtors and, thus, the bankruptcy stay is inapplicable.

Our holding in this regard is supported by a decision of the Ninth Circuit Court of Appeals in a similar case. In *Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995), the debtor initiated litigation by seeking a declaratory judgment. The creditor, in turn, counter-claimed against the debtor. In arguing that the bankruptcy stay did not apply, the creditor urged the court to view the dispute as a single proceeding brought by the debtor. The court rejected the creditor's argument, stating:

> All proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, cross claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.

*Id.* at 1137 (quoting *Maritime Elec.Co. v. United Jersey Bank*, 959 F.2d 1194, 1204-05 (3d Cir. 1992)). The court ultimately concluded that while the debtor's appeal of a judgment in favor of the creditor was stayed, that portion of the appeal involving the dismissal of the debtor's claims against the creditor was not stayed.

In sum, the present appeal is from an action filed by the Dwigginses against the Bank. It is separate from any action brought by the Bank against them. The provision of section 362 is not applicable and did not serve to toll the time the Dwigginses had to file their notice of appeal. Accordingly, because the notice of appeal in this case was filed beyond the thirty days allowed under our rules, it was not timely, and this court is without jurisdiction to entertain the present appeal. The Bank's motion to dismiss is granted.