In re Larry J. DUNCAN; Lois
J. Duncan, Debtors,

Thomas J. CARLSON, Trustee of the
Bankruptcy Estate of Larry J. and
Lois J. Duncan, Appellee,

v.

Robert NORMAN; Earl Norman,
Appellants.

No. 92–1073.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 18, 1992.

Decided March 2, 1993.

Rehearing Denied March 29, 1993.

Kevin B. Spaeth, Cape Girardeau, MO,
argued (Gary A. Love of Ozark, MO, on the
brief), for appellants.

Phillip R. Garrison, Springfield, MO, ar-
gued, for appellee.

Before HANSEN, Circuit Judge, and
HEANEY and ROSS, Senior Circuit
Judges.

ROSS, Senior Circuit Judge.

Appellants Robert Norman and Earl Nor-
man (the Normans) appeal from the district
court's affirmance of a bankruptcy judg-
ment granting summary judgment in favor
of Thomas J. Carlson, bankruptcy Trustee
for the estate of Larry and Lois Duncan
(the Duncans). The Normans' liability was
premised upon their agreement to indemni-
fy the Duncans against certain liabilities.
We reverse and remand for further pro-
ceedings consistent with this opinion.

FACTS

Larry and Lois Duncan owned a majority
of stock in two corporations, known as R &
D Distributing, Inc., doing business as
Duncan Services, and Republic Leasing,
Inc. In the course of operating these busi-
nesses, the Duncans, in their individual ca-
pacities, either gave a $275,000 promissory
note or guaranteed a note given in the
same amount by one or both of the corpo-
rations to the Firestone Bank of Lisbon,
Ohio.

In June 1988, the Duncans sold the stock
in these corporations to two brothers, Rob-
ert and Earl Norman, pursuant to a stock
purchase agreement. In addition to the
stock purchase agreement, the Normans
also executed an indemnification agree-
ment and a stock purchase agreement dis-
closure list. The stock purchase agree-
ment disclosure list disclosed, among other
things, "R & D Distributing, Inc. executed
a demand promissory note to The Firestone
Bank, Lisbon, Ohio, in the amount of $275,-

000.00." The indemnification agreement provided in part:

> Buyers [Normans] will indemnify and hold the Sellers [Duncans] harmless against any and all liabilities, claims, causes of actions, costs and expenses arising out of ... [a]ny personal guarantees executed by the Sellers to warrant and guarantee debt acquired by the Corporations in the ordinary course of business.

On April 12, 1989, Firestone Bank declared a default under the note and brought suit in the United States District Court against the Duncans and against R & D Distributing, Inc. and Republic Leasing, Inc., seeking enforcement of the promissory note (Firestone Bank/Duncan action). On May 11, 1989, the Duncans filed a third-party complaint against the Normans seeking to recover under the indemnification agreement from any liability which ultimately might be assessed against them on the note to Firestone Bank.

On June 5, 1989, the Normans filed an answer in which they claimed, by way of a defense, that the indemnification agreement was void because of misrepresentations by the Duncans. Before this cause of action had an opportunity to proceed, the underlying district court litigation was stayed by operation of law on July 14, 1989, when the Duncans filed for Chapter 7 voluntary bankruptcy.

The Firestone Bank, as a creditor in the bankruptcy proceeding, filed several requests for extensions of time to file an objection to the dischargeability of the Duncan loan. The last of these extensions expired the first week of August 1990, with no objection having been filed by Firestone Bank.[1]

On July 31, 1990, the automatic stay was modified by order of the bankruptcy court so as to allow the Firestone Bank/Duncan litigation to proceed.[2] On or about August 8, 1990, the Trustee notified the Normans that they were obligated to defend the Duncans in the underlying Firestone Bank/Duncan action pursuant to the indemnification agreement—an event described by the parties as the "tender of defense." This demand included a five-day deadline imposed by the Trustee as well as a demand that the defense be made without reservation of rights.

At about this same time and without the knowledge of the Normans, the Duncans, the bankruptcy Trustee and Firestone Bank entered into an agreement whereby the Duncans agreed to sign a consent to judgment in the Firestone Bank/Duncan action in the event the Normans refused to provide a defense to the Duncans. Specifically, the consent agreement provided that the Firestone Bank could take a judgment against the Duncans if the Normans failed to provide a defense without reservation. Furthermore, in the event the Normans did take the defense, the Duncans agreed that the consent agreement could be used against them as an admission against interest. Finally, the agreement provided that in the event the indemnification agreement was held to be invalid or otherwise not put into operation, the Firestone Bank would release the Duncans from the judgment, to the extent that this release did not impair Firestone's rights against the Normans, R & D Distributing or Republic Leasing. In essence, the consent agreement served to

---

**1.** The Normans contend that at this point in time the Duncan loan was in effect discharged because the Firestone Bank no longer had an opportunity to object. We leave to the district court on remand to determine the significance of the expiration of the objection period.

**2.** We note that the third-party action instigated by the Duncans against the Normans was not subject to the automatic stay provision of the bankruptcy code. 11 U.S.C. § 362(a)(1) forbids continuation of a "proceeding *against* the debtor." (Emphasis added).

> Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, cross-claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay. Thus, within one case, actions *against* a debtor will be suspended even though closely related claims asserted *by* the debtor may continue.

*Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1204–05 (3d Cir.1991) (emphasis in original).

insulate the Duncans from liability, while ensuring that the Normans would be held responsible under the indemnification agreement.

Without knowledge of this agreement,[3] the Normans refused to defend the Duncans. Consequently, on August 17, 1990, the Duncans filed a waiver of notice and the consent to judgment in accordance with their agreement with Firestone Bank and the Trustee. Accordingly, on August 20, 1990, the district court entered judgment in favor of Firestone Bank against Larry and Lois Duncan. No further action was taken on the pending third-party proceeding instigated by the Duncans against the Normans.

On the very next day, August 21, 1990, and before there had been any ruling on the third-party complaint, the Trustee filed an adversary complaint in bankruptcy court against the Normans, seeking to enforce the indemnification agreement, in effect duplicating the cause of action raised by the Duncans in their third-party action in the district court. The Normans filed an answer to the adversary complaint and alleged several affirmative defenses. On February 14, 1991, the Normans moved for summary judgment based on their affirmative defenses. The court denied the motion finding that genuine issues of fact existed so as to preclude a summary ruling in favor of the Normans.

On March 6, 1991, the bankruptcy Trustee, acting on behalf of the estate of Larry and Lois Duncan, filed a supplemental motion for summary judgment, seeking judgment on the Normans' liability under the indemnification agreement. The bankruptcy court sustained the Trustee's motion for summary judgment, finding that the entry of judgment against the Duncans was the triggering event for the Normans' liability

under the indemnification agreement. The bankruptcy court sustained the Trustee's motion for summary judgment, finding that the entry of judgment against the Duncans was the triggering event for the Normans' liability under the indemnification agreement. The bankruptcy court further ruled that the Normans cannot now raise defenses attacking the effect of such judgment against the Duncans if those matters could have been raised by the Normans in defense of the Duncans in the suit filed by Firestone Bank. Based on the court's finding that the affirmative defenses raised in response to the adversary complaint could have been litigated during the Firestone Bank/Duncan action, the Normans were estopped to raise the defenses in the subsequent action on the indemnity contract. On appeal, the district court affirmed the bankruptcy court's grant of summary judgment in favor of the Trustee. The Normans now appeal.

### DISCUSSION

We find several problems with this outcome. First, the Trustee tendered a defense which provided for a response time of only five days. More importantly, however, the tender of defense notice to the Normans disclosed neither the terms nor the existence of the consent agreement between the Trustee, Firestone Bank and the Duncans. The Normans had no notice that if they did not accept the tender of defense immediately, or if they instead chose to rely on the third-party litigation pending in the district court, a default judgment would be entered as delineated in the consent agreement, an agreement which effectively provided a "no-lose" situation for the Trustee, Firestone Bank and the Duncans.

**3.** We reject the Trustee's contention that the Normans were notified of the consent agreement prior to the entry of the consent judgment by virtue of a letter dated Friday, August 17, 1990. This letter notified the district court of the Duncans' consent to the judgment and included a copy of the consent agreement between the Trustee, Firestone Bank and the Duncans. Although a copy of the letter dated August 17, 1990 was allegedly sent to the Normans, it

would not have been received prior to the time the Duncans' consent to judgment was filed with the district court, also on August 17, 1990. While it is highly unlikely that the Normans would have received the letter prior to the actual entry of judgment on Monday, August 20, 1990, it is certain the Normans did not have the benefit of notification as they contemplated their course of action prior to the expiration of the tender of defense.

This consent agreement was not merely a confession of judgment by the Duncans, but additionally provided that in the event the Normans did accept the tender of defense, the provisions of the consent agreement could be used by the Firestone Bank as an admission against interest by the Duncans. Even aside from the confession of judgment, this admission by the Duncans substantially interfered with the Normans' right to assert the defenses of the Duncans on the underlying note. The highly questionable nature of the consent agreement is further highlighted by the fact that Phillip Garrison and his law firm represent not only the interests of the bankruptcy Trustee, but also the Firestone Bank in the underlying Firestone Bank/Duncan litigation.

We recognize the well established law that where an indemnitor "was obligated to defend in the prior action and ... was given notice and a reasonable opportunity to defend, it may be said to have been 'vouched in' in the earlier action ... [and] the judgment against the indemnitee ... is conclusive against the indemnitor under the doctrine of collateral estoppel." *Lane v. Hartford Fire Ins. Co.*, 343 F.Supp. 79, 85 (E.D.Mo.1972). The indemnitor, however, is not bound by a judgment obtained by fraud or collusion. *Id.*

The failure to notify the Normans of the consent agreement served to hide the collusive nature of the Duncans' consent to judgment. However, even if the Normans had been notified, the Duncans had relinquished their right to contest the validity of the underlying note, thereby substantially interfering with the Normans' ability to defend.

We note that the third-party complaint filed by the Duncans in district court against the Normans has not been finally resolved. It is well established that "the cause of action asserted by a third party plaintiff, whether based on contribution, indemnification or some other theory of recovery, is separate and distinct from the

... claim asserted by the plaintiff against the defendant." *State ex rel. General Elec. Co. v. Gaertner*, 666 S.W.2d 764, 766 (Mo.1984). *See also Burns & McDonnell Eng'g v. Torson Constr. Co.*, 834 S.W.2d 755, 757 (Mo.Ct.App.1992).

While a ruling was entered in the Firestone Bank/Duncan action, no ruling was ever made with respect to the third-party complaint filed by the Duncans and that action remains pending today. Nevertheless, the bankruptcy judge allowed the Trustee to file an adversary complaint on the same issue already in controversy in the underlying litigation, effectively sidestepping the underlying cause of action. The bankruptcy court then summarily ruled that the Normans' affirmative defenses were not relevant to the issue of liability on the indemnification agreement. We fail to understand why the bankruptcy court would allow the underlying district court litigation to proceed, but then eliminate a substantial aspect of that litigation by its ruling on the identical issue subsequently raised in the adversary complaint in bankruptcy court.

The Duncans chose the district court to resolve their dispute with the Normans. This court is averse, in the interest of equity, to let stand a result which allows the Duncans to sue the Normans in district court, but leaves the Normans unable to assert their affirmative defenses and counterclaims in that forum. *See In re Turboff*, 93 B.R. 521, 523 (S.D.Tex.1988). Because of various procedural entanglements, the Normans have been denied an opportunity to litigate whether the indemnity agreement was ever contractually triggered or whether the underlying judgment in the Firestone Bank/Duncan action, the so-called triggering event, was obtained by fraud or collusion.[4] The Normans intended to ignore the tender of defense, in their good faith belief that, because of the posture of the case, these claims would be

---

**4.** We reject the Trustee's contention that the Normans failed to raise the collusion argument prior to this appellate proceeding. On the contrary, the Normans presented their argument of

collusion to the bankruptcy court, both in their motion for summary judgment and in opposition to the Trustee's motion for summary judgment.

**494**

litigated in the third-party action instigated by the Duncans.

At the very least, a factual issue exists as to whether the attempt by the Trustee, the Firestone Bank and the Duncans to manufacture the Normans' liability constitutes collusion. We conclude that the failure to disclose the terms of the consent agreement in a timely fashion and the possible collusion resulting therefrom, coupled with the short time to accept the tender of defense, is enough to preclude summary judgment.

Accordingly, we reverse the decision of the district court granting summary judgment in favor of the Trustee and remand to the district court for further proceedings consistent with this opinion.