68 F.3d 1131
 64 USLW 2287, Bankr. L. Rep. P 76,652,
95 Cal. Daily Op. Serv. 7577,
95 Daily Journal D.A.R. 12,982,
Pens. Plan Guide P 23,914
 G. Steven PARKER, Plaintiff-Appellant,
v.
David L. BAIN, Esq.; Pacific Ship Repair & Fabrication
Profit Sharing Plan, Inc.; Bank of America
National Trust & Savings Association,
Defendants-Appellees.
 No. 94-55123.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 9, 1995.
Decided Sept. 28, 1995.
 
 Jerry Michael Suppa and Samy S. Henein, Suppa, Highnote & Lee, San Diego, California, for plaintiff-appellant.
 Edward D. Vogel, David M. Beckwith and Karin Dougan Vogel, Sheppard, Mullin, Richter & Hampton, San Diego, California, for defendant-appellee Pacific Ship Repair and Fabrication Profit Sharing Savings Plan.
 Richard M. Segal, Pillsbury, Madison & Sutro, San Diego, California, for defendant-appellee Bank of America National Trust and Savings Association.
 Appeal from the United States District Court for the Southern District of California.
 Before: HALL and LEAVY, Circuit Judges, and LEVI,* District Judge.
 HALL, Circuit Judge:
 
 
 1
 Steven Parker was co-owner of a ship repair company. In order to prevent the company from financial ruin, he stole funds from his company's pension plan (the Plan) and transferred the funds into his company's general account. He was prosecuted and pleaded guilty to several federal charges.
 
 
 2
 A complex round of civil litigation then ensued. This appeal involves Parker, the Plan, and Bank of America, which is the trustee of the Plan. The district court granted summary judgment in favor of the Plan on its claim that Parker had breached his fiduciary duty to the Plan, and dismissed for lack of standing Parker's claim that Bank of America breached its fiduciary duty to the Plan. Parker filed a voluntary Chapter 11 petition in bankruptcy and then appealed both decisions.
 
 
 3
 The district court had jurisdiction under 28 U.S.C. Sec. 1331. The parties dispute whether this Court has jurisdiction over the appeal from the grant of summary judgment because Parker's notice of appeal may have been untimely. This Court has jurisdiction over the dismissal of Parker's claim against Bank of America under 28 U.S.C. Sec. 1291. For the reasons that follow, we conclude that Parker's appeal from the grant of summary judgment against him is stayed by the automatic stay, but that his appeal from the dismissal of his claim against Bank of America is not. We affirm the dismissal of his claim against Bank of America.
 
 I.
 
 4
 Steven Parker was Vice President and eighty-percent owner of Pacific Ship Repair and Fabrication, Inc. (Pac Ship), a San Diego company with approximately 400 employees. David Bain was President, CEO, and Chairman of the Board. Bain owned the remaining twenty percent.
 
 
 5
 Pac Ship experienced financial difficulties, prompting its creditors to file an involuntary petition in bankruptcy. In order to avoid bankruptcy,[1] Parker and Bain conspired to and did embezzle approximately $1.4 million from Pacific Ship Repair and Fabrication Profit Sharing Savings Plan, their company's ERISA governed pension plan.
 
 
 6
 The U.S. Attorney learned of these misdeeds and prosecuted. As the result of a plea bargain, Parker waived indictment and pleaded guilty to a four-count superseding information, which included two counts of conspiracy, one count of knowingly filing a false income tax return, and one count of knowingly assisting in the filing of a false IRS form 5500. In pleading guilty, Parker admitted that he directed employees of Pac Ship to "cash in" assets of the Plan, which he then transferred to Pac Ship's general account. Parker used this money to reduce his personal debt to Pac Ship and to pay Pac Ship's creditors. He then attempted to cover up the embezzlement by filing false personal tax returns and false corporate IRS forms.
 
 
 7
 Civil litigation followed close on the heels of the criminal prosecution. Parties joined in the litigation included Parker, Bain, Pac Ship, Arcwell Corporation (predecessor corporation to Pac Ship), the Plan, Bank of America (the named trustee of the Plan), two employees of Pac Ship, and one employee of Bank of America.
 
 
 8
 Some of the claims have been dismissed or settled, and some have been actively litigated during the pendency of this appeal. Following is a schematic description of the particular parties and claims giving rise to this appeal:
 
 
 9
 1) Parker ----> Plan 3d amended complaint
 (declaratory relief, re: whether Parker was fully
 vested in the Plan)
2) Parker Plan 1st amended counterclaim
 (declaratory relief re: whether the Plan should seek
 reimbursement from Pac Ship on an alleged note
 obligating Pac Ship to repay monies "borrowed"
 from the Plan by Parker and Bain)
4) Parker ----> Bank 1st amended counterclaim[2]
 of
 Ameri- (declaratory relief as described in # 3, breach of
 ca fiduciary duty)[3]
 
 
 10
 After two and one-half years of litigation, the Plan filed a motion for summary judgment on its counterclaim against Parker. Bank of America filed a motion to dismiss the counterclaim against it for failure to state a claim, or in the alternative, for summary judgment.
 
 
 11
 The district court granted the Plan's motion for summary judgment by minute order on August 9, 1993. On September 23, it issued a written order ruling that Parker was a de facto fiduciary of the Plan, and that he had breached his fiduciary duty to the Plan.
 
 
 12
 The district court also held a hearing to determine the amount of damages suffered by the Plan and the amount of benefits due Parker under the Plan. It then filed a thirty-one page written order, which explained the court's calculation of damages and attorney's fees. It also dismissed Parker's counterclaim against Bank of America on the ground that, because Parker's breach extinguished any interest he had in the Plan, he was no longer a "participant" and therefore lacked standing under ERISA to bring a suit for breach of fiduciary duty.
 
 
 13
 On October 20, the district court entered judgment in favor of the Plan in the amount of $405,614.56 in damages, $58,557.55 in attorney's fees, and $3,142.29 in costs. This judgment also dismissed Parker's complaint and counterclaim against the Plan, reasoning that Parker's interest in the Plan was extinguished by setoff against the damages suffered by the Plan. On October 21, the district court entered judgment in favor of Bank of America and awarded it costs.
 
 
 14
 Parker then filed a voluntary Chapter 11 petition in bankruptcy on November 10. Six days later, on November 16, Parker filed his Notice of Appeal. Although Parker obtained permission from the bankruptcy court to employ the attorney who represents him in this appeal, he neither sought nor obtained relief from the automatic stay before filing his notice.
 
 
 15
 The Notice of Appeal itself is rather confusing. It states that Parker appeals from two things: 1) the October 1st order granting summary judgment for the Plan and dismissing the counterclaim against Bank of America; and 2) the October 19th judgment[4] in favor of Bank of America. Additionally, Parker's appellate brief makes reference to several matters outside the record, most notably an alleged "side agreement" between Parker and Bain in which Bain agreed to keep Parker on payroll at minimum wage until his pension fully vested. The Plan moved to strike Parker's brief and dismiss the appeal. A motions panel of this Court denied the motion on July 21, 1994.
 
 II.
 
 16
 Before reaching the merits of Parker's arguments, we first must decide whether the automatic stay resulting from Parker's bankruptcy petition affects this appeal.[5] Our analysis begins with the relevant language of the bankruptcy code:
 
 Sec. 362. Automatic stay
 
 17
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of--
 
 
 18
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.
 
 
 19
 11 U.S.C. Sec. 362. We think it clear from this language that the automatic stay would apply, if at all, if this appeal constitutes the "continuation" of a "judicial ... action or proceeding against the debtor." Id.
 
 
 20
 We need not spill a great deal of ink discussing the assertion, pressed by Parker, that an appeal by the debtor cannot constitute the continuation of an action against the debtor. This Court, as well as seven other courts of appeals,[6] has concluded that the automatic stay can operate to prevent an appeal by a debtor when the action or proceeding below was against the debtor. "[S]ection 362 should be read to stay all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or the appellee...." Ingersoll-Rand Fin. Corp. v. Miller Mining Co., 817 F.2d 1424, 1426 (9th Cir.1987) (quoting Cathey v. Johns-Manville Sales Corp., 711 F.2d 60, 62 (6th Cir.1983)); see also Delpit v. Commissioner Internal Revenue Serv., 18 F.3d 768, 770-71 (9th Cir.1994). This rule finds its source in the language of section 362, which extends the automatic stay to the continuation, as well as the commencement, of an action against the debtor.
 
 
 21
 Nor are we taken with the Plan's argument that Bankruptcy Rule 6009 provides an exemption from the automatic stay. That rule provides:
 
 
 22
 With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.
 
 
 23
 Bankruptcy Rule 6009. This rule derives from the former Bankruptcy Rule 610,[7] the purpose of which was merely to ease the old bankruptcy code's burdensome requirement that the trustee or receiver obtain court approval prior to prosecuting or defending actions in which the estate had an interest. See 11 U.S.C. Sec. 29(b)-(c) (1976) (requiring trustee or receiver to obtain court approval prior to representing the bankrupt in a pending suit) (repealed 1979); see also In re Capgro Leasing Assocs., 169 B.R. 305, 312 (Bankr.E.D.N.Y.1994) (noting that the old act required the trustee or receiver to get authorization from the bankruptcy court before prosecuting an action and that Rule 610 was designed to eliminate the requirement).
 
 
 24
 Rule 6009 does not trump the code's automatic stay. It simply clarifies that the trustee or debtor in possession has standing to, and may, litigate appropriate actions on behalf of the estate without prior approval of the bankruptcy court. Its scope extends only to litigation that is not subject to the automatic stay, or to which the bankruptcy court has granted relief from the stay. See, e.g., Cannon v. Hawaii Corp. (In the Matter of Hawaii Corp.), 796 F.2d 1139, 1142 n. 1 (9th Cir.1986) (explaining that Rule 6009 gives a trustee control over litigation); Read v. Duck (In re Jacksen), 105 B.R. 542, 545 (9th Cir. BAP 1989) (noting that Rule 6009 allows a trustee to appear in a "representative capacity" for the bankruptcy estate). We therefore reject the Plan's contention that Rule 6009 allows Parker to prosecute this appeal, despite that the appeal may fall within the terms of section 362, and hold that Rule 6009 does not authorize proceedings that section 362 would otherwise bar.[8] Cf. Hanover Indus. Machine Co. v. American Can Co. (In re Hanover Indus. Machine Co.), 61 B.R. 551, 552 (Bankr.E.D.Pa.1986) ("the Code defines the creation, alteration or elimination of substantive rights but the Bankruptcy Rules define the process by which privileges may be effected").
 
 
 25
 The heart of the question, then, is whether this appeal is, under the code, the continuation of litigation that in the district court constituted an "action or proceeding against the debtor." 11 U.S.C. Sec. 362(a)(1). We acknowledge that Parker fired the first shot in this round of civil litigation by filing a complaint for declaratory relief, which clearly is not an action against the debtor. The Plan, however, quickly shot back with a counterclaim for breach of fiduciary duty, conversion, fraud, and negligent misrepresentation. Had the Plan acted faster and filed a complaint against Parker before Parker filed suit against it, we would have no difficulty concluding that the Plan's claims constituted actions against the debtor. Because of the actual order of events, however, we face a question of first impression in this circuit: whether a counterclaim against a debtor constitutes an "action of proceeding" that is subject to the automatic stay.
 
 
 26
 The Plan urges us to view the entirety of this complex dispute as a single proceeding brought by the debtor, because the litigation began when Parker filed a complaint for declaratory relief. These "proceedings," it therefore reasons, were not "originally brought against the debtor." Ingersoll-Rand, 817 F.2d at 1426. We conclude, however, that the proposed characterization of this multiparty, multiclaim case, based solely on who filed the complaint, is too formal.
 
 
 27
 Two other courts of appeals have discussed the application of the automatic stay to cases in which the debtor and the adverse party have claims against one another. Both courts have concluded that, for purposes of application of the automatic stay, a single case may include several "actions or proceedings." Thus, who filed the complaint is not dispositive of whether the case involves an action or proceeding against the debtor. See Carlson v. Norman (In re Duncan), 987 F.2d 490, 491 n. 2 (8th Cir.1993); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204-06 (3d Cir.1992).[9] We find the reasoning of the Court of Appeals for the Third Circuit especially instructive and adopt it as our own:
 
 
 28
 All proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, cross claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.
 
 
 29
 Maritime, 959 F.2d at 1204-05.
 
 
 30
 We therefore embark on the "disaggregation" of this appeal. Parker's Notice of Appeal indicates that he appeals from two decisions of the district court: (1) the grant of summary judgment in favor of the Plan on the Plan's counterclaim against Parker for breach of fiduciary duty, conversion, fraud, and negligent misrepresentation; and (2) the dismissal of Parker's "counterclaim" against Bank of America for breach of fiduciary duty and declaratory relief. We conclude that the Plan's counterclaim was, "at its inception," Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 449 (3d Cir.1982), an action against Parker, who is now a Chapter 11 debtor. The appeal from the grant of summary judgment--including Parker's challenge to the calculation of damages and award of attorney's fees[10]--is therefore stayed.
 
 
 31
 The appeal from the dismissal of Parker's claim for breach of fiduciary duty and declaratory relief against Bank of America, however, is not stayed. Parker originally brought this claim at the same time he filed a counterclaim against the Plan. It is a claim by, not against, the debtor, and its successful prosecution would "inure to the benefit of the bankruptcy estate." Carley Capital Group v. Fireman's Fund Insurance Co., 889 F.2d 1126, 1127 (D.C.Cir.1989) (per curiam) (quoting St. Croix, 682 F.2d at 448).[11] We therefore hold that Parker's appeal from the dismissal of his claim against Bank of America is not stayed and proceed to discuss the merits of that aspect of this appeal.
 
 III.
 
 32
 Before we do so, however, we briefly address the Plan's contention that this Court lacks jurisdiction over the appeal from the grant of summary judgment in its favor because the Notice of Appeal was untimely. Parker filed his Notice of Appeal on November 16, 1993, six days after the filing of his petition in bankruptcy gave rise to the automatic stay. Because any act taken in violation of the automatic stay is void, see Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin), 890 F.2d 123, 125 (9th Cir.1989), the Notice of Appeal is ineffective to the extent it purports to confer jurisdiction on this Court to hear an appeal from the grant of summary judgment in favor of the Plan. We therefore decline to address whether the notice is timely with respect to the grant of summary judgment. Until Parker obtains relief from the stay, the Notice of Appeal, in the eyes of this Court, is a nullity.
 
 IV.
 
 33
 We now address the district court's dismissal of Parker's claim against Bank of America. In his counterclaim against the Plan, Parker also brought a claim of fiduciary breach against Bank of America, the named trustee of the Plan. Parker alleged that Pac Ship had executed a note to reimburse the Plan for the money stolen by Parker, that Pac Ship had defaulted on the note, and that Bank of America, as trustee of the Plan had failed to take appropriate action to collect on the note, thereby breaching its fiduciary obligation to the Plan. The district court dismissed Parker's claim, reasoning that at the time Parker brought his claim against Bank of America, he was neither a participant nor a beneficiary of the Plan, and therefore lacked standing under ERISA to bring a claim for breach of fiduciary duty.
 
 
 34
 ERISA provides that an action for breach of the fiduciary duty may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109[12] of this title." 29 U.S.C. Sec. 1132(a)(2). Thus, if Parker was not a participant, beneficiary, or fiduciary when he filed his first amended counterclaim against Bank of America on June 21, 1993, he lacked statutory standing. Parker is no longer an employee of Pac Ship, the Plan sponsor. Nonetheless, he claims still to be a "participant" in the Plan. We disagree.
 
 
 35
 ERISA defines "participant" as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. Sec. 1002(7). A former employee, such as Parker, is only a participant if he has a "colorable claim to vested benefits." Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 118, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1988). Moreover, this Court has held that dismissal for lack of standing is appropriate even if the plaintiff's entitlement to benefits, and thus his status as a "participant," was uncertain at the time the lawsuit was filed. Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 715 (9th Cir.1990).
 
 
 36
 Parker contends that he remains a "participant" in the Plan for two reasons. First, he claims to have executed a "side agreement" with Bain in which Bain agreed to keep Parker on payroll at minimum wage until Parker's pension fully vested. Based on the side agreement, Parker claims to have a "colorable claim" to benefits. This side agreement, however, does not appear in the record. We therefore decline to address whether this alleged agreement confers standing to sue as a participant in the Plan.
 
 
 37
 Parker also contends that he has a colorable claim to benefits because he has not received all the money to which he is entitled under the terms of the Plan. The district court, however, ruled that Parker, at the time he directed Pac Ship employees to transfer funds from the Plan, was a de facto fiduciary of the Plan, that he had breached his fiduciary duty to the Plan by embezzling funds, and that the damages suffered by the Plan exceeded Parker's account balance in the Plan, thereby extinguishing any interest Parker would have had in the Plan absent his fiduciary breach. Because Parker no longer has an interest in the Plan, the district court reasoned, he cannot have a colorable claim to benefits and therefore lacks standing to bring a claim for breach of fiduciary duty. Although Parker disputes each of these conclusions, we agree with the district court.[13]
 
 
 38
 A. The district court correctly concluded that Parker was a de facto fiduciary who breached his fiduciary duty.
 
 
 39
 Parker contends that the district court erred in ruling that he was a fiduciary. "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any ... discretionary responsibility in the administration of such plan." 29 U.S.C. Sec. 1002(21)(A).
 
 
 40
 Parker's argument is a bit confused, but he appears to argue that he could not qualify as a fiduciary because he received no personal benefit from his actions, that some of the illegal transactions occurred without his knowledge, that because he was merely acting at Bain's direction, he did not exercise any "discretion," and that his guilty plea does not constitute an admission as to all the allegation contained in the superseding information.
 
 
 41
 Parker concedes in his opening brief, however, that in pleading guilty, he conclusively admitted that he "directed employees of the company to 'cash in' certain assets of the Plan," and that he "directed employees of the company to 'transfer' assets of the Plan to Pac Ship's general operating account." See also Superseding Information at 3, 6; United States v. Mathews, 833 F.2d 161, 163 (9th Cir.1987) (holding that guilty plea conclusively establishes all factual allegations of the formal criminal charge). These two admissions, by themselves, are sufficient to establish that Parker was a fiduciary and that he breached his duty.
 
 
 42
 ERISA's definition of "fiduciary" is functional rather than formal. See Mertens v. Hewitt Assocs., --- U.S. ----, ----, 113 S.Ct. 2063, 2071, 124 L.Ed.2d 161 (1993); Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1459 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 301, 133 L.Ed.2d 206 (1995). Thus, if Parker in fact exercised any discretionary authority over Plan assets, then he was a fiduciary, regardless whether the Plan itself named him as such. See Yeseta v. Baima, 837 F.2d 380, 386 (9th Cir.1988) (holding that a person who withdraws money from a pension plan and places it into the company's account in order to pay operating expenses is a fiduciary). Parker clearly exercised discretionary authority over Plan assets when he personally ordered Pac Ship employees to withdraw funds from the Plan. We therefore agree that Parker was a de facto fiduciary.
 
 
 43
 Furthermore, transferring funds from the Plan to Pac Ship's general account constitutes a breach of the fiduciary duty. ERISA requires fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries." 29 U.S.C. Sec. 1104(a)(1)(A). Additionally, a fiduciary may not "act in any transaction involving the plan on behalf of a party ... whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." 29 U.S.C. Sec. 1106(b)(2). Embezzling funds from the Plan is contrary to the interests of Plan participants and beneficiaries, in violation of section 1104(a)(1)(A). In transferring those funds into Pac Ship's account, Parker acted on behalf of Pac Ship in a transaction in which Pac Ship's interests were clearly adverse to the interests of the Plan, in violation of section 1106(b)(2). Thus, the district court did not err in concluding that Parker was a fiduciary and that he breached his fiduciary duty to the Plan.
 
 
 44
 B. The district court properly set off Parker's interest in the Plan against the damages resulting from his breach, thereby extinguishing his interest in the Plan.
 
 
 45
 The district court, in its calculation of damages, concluded that Parker was, at the time of his first misappropriation, seventy-percent vested in an account balance of $152,099.00 and was therefore entitled at that time to $106,469.00.[14] It also concluded, however, that Parker's breach had damaged the Plan in the amount of $405,614.56.[15] It then reasoned that, because the amount Parker owed to the Plan exceeded the amount the Plan owed to him, his liability to the Plan extinguished any remaining interest he had in the Plan.
 
 
 46
 We expressly approve the district court's decision to set off the money owed by the Plan against the money Parker owed to the Plan. We note initially our agreement with the Court of Appeals for the Third Circuit, which concluded that ERISA's antialienation provision, 29 U.S.C. Sec. 1056(d)(1), does not prohibit a plan from withholding benefits from a fiduciary cum participant it believes to have wronged the pension fund. See Coar v. Kazimir, 990 F.2d 1413, 1419 (3d Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 179, 126 L.Ed.2d 138 (1993). This decision is informative here, because the court-ordered setoff is functionally similar to a plan's unilateral withholding of benefits.
 
 
 47
 We further conclude that the case at bar does not raise any of the concerns the Coar court noted at 990 F.2d at 1424 n. 13, wherein it hypothesized that a situation could arise in which a plan might prematurely withhold benefits, based, for instance, on a single unwise investment decision. This is not such a case. Having found that Parker had committed his first breach in 1986, the district court surely was not "premature," when, in 1993, it held Parker's interest extinguished based on the fact that the Plan could have withheld benefits as of the initial 1986 breach. See Order of October 1, 1993, at 15.
 
 
 48
 In sum, the district court properly determined that Parker no longer has any interest in the Plan: Parker was a de facto fiduciary when he exercised control over Plan accounts; his embezzlement of those funds constituted a fiduciary breach, and the damages he owes to the Plan as a result of that breach exceed any money the Plan owed him. His interest in the Plan is extinguished. Parker therefore has no colorable claim to benefits, and, as a result, cannot bring a claim as a "participant" in the Plan against Bank of America for breach of the fiduciary duty. We therefore affirm the district court's dismissal of Parker's claim against Bank of America for lack of statutory standing.
 
 V.
 
 49
 We conclude that Parker's appeal from the grant of summary judgment in favor of the Plan on the Plan's counterclaim against Parker is stayed. We affirm the dismissal of Parker's claim against Bank of America. Parker shall pay costs both to the Plan and to Bank of America.
 
 
 50
 STAYED in part, and AFFIRMED in part.
 
 
 
 *
 Honorable David F. Levi, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 At the time, Parker owed Pac Ship about $800,000 in shareholder loans. Thus, if Pac Ship had been forced to liquidate, Parker would have been stuck with enormous personal liability to his company's creditors
 
 
 [2]
 The parties refer to the claim against Bank of America as a counterclaim. It is not; Bank of America did not first sue Parker
 
 
 [3]
 Litigation involving other claims and parties has continued while this appeal has been pending. Schematically, it is as follows:
 1) Parker ----> Bain 3d amended complaint (breach of contract,
 misrepresentation, etc.)
2) Parker ----> Pac 3d amended complaint (misrepresentation,
 Ship interference with prospective business advantage,
 etc.)
3) Parker 

----------
4 In fact, no judgment was entered on October 19th. Judge Gonzalez signed the judgment in favor of Bank of America on October 19th, but that judgment was not entered until October 21.
5 We did not learn that Parker had filed a petition in bankruptcy until oral argument. We thereafter ordered additional briefing on the question whether this appeal is barred by the automatic stay.
6 See Barbier v. Shearson Lehman Hutton, Inc., 943 F.2d 249, 250 (2d Cir.1991); Borman v. Raymark Indus., 946 F.2d 1031, 1036 (3d Cir.1991); Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Invest. Corp., 797 F.2d 227, 230 n. 4 (5th Cir.1986); Cathey v. Johns-Manville Sales Corp., 711 F.2d 60, 62 (6th Cir.1983); Sheldon v. Munford, Inc., 902 F.2d 7, 8 (7th Cir.1990); Farley v. Henson, 2 F.3d 273, 274 (8th Cir.1993); Ellison v. Northwest Eng'g Co., 707 F.2d 1310, 1310 (11th Cir.1983).
7 In response to the Bankruptcy Reform Act of 1978, the Advisory Committee on Bankruptcy Rules convened and drafted new rules, which the Committee subsequently submitted to the Supreme Court for consideration. The Supreme Court prescribed these new rules in 1983. Current Rule 6009 replaced the former Rule 610, with only minor changes. See Bankruptcy Rule 6009 advisory committee's note.
8 We recognize that we part company with the Court of Appeals for the Tenth Circuit in this conclusion. See Chaussee v. Lyngholm (In re Lyngholm), 24 F.3d 89, 91-92 (10th Cir.1994); Autoskill Inc. v. National Educ. Support. Sys., Inc., 994 F.2d 1476, 1485-86 (10th Cir.) (relying on the "plain language" of Rule 6009 to allow an appeal brought by the debtor), cert. denied, --- U.S. ----, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993). We are persuaded, however, by the reasoning of the Bankruptcy Court in In re Capgro, 169 B.R. at 309-13, which discusses the history and purpose of Rule 6009.
9 See also Carley Capital Group v. Fireman's Fund Ins. Co., 889 F.2d 1126, 1127 (D.C.Cir.1989) (per curiam) (implying without discussion that a counterclaim or cross-claim could constitute an action or proceeding subject to the automatic stay).
10 The calculation of damages and award of attorney's fees are part and parcel of the district court's grant of summary judgment, notwithstanding that the district court ruled on these issues in a separate order. Cf. Alpern v. Lieb, 11 F.3d 689, 690 (7th Cir.1993) (reasoning that imposition of Rule 11 sanctions is a "separate judicial unit" and should be considered an action against a debtor subject to the automatic stay independent of whether the stay applies to the proceedings in which the court imposed sanctions).
11 If Parker had succeeded on his breach of fiduciary claim, Bank of America would have been required to "make good to [the] plan any losses to the plan resulting from such breach." 29 U.S.C. Sec. 1109(a). Parker, as a Plan participant, or his estate after the filing of his Chapter 11 petition, would benefit from his pension plan's being made whole. Although we conclude below that at the time Parker filed his claim, he was no longer a participant in the Plan due his own fiduciary breach, it was certainly possible at the time Parker brought his claim that the district court would have found that he remained a participant. Thus, when Parker first brought his claim against Bank of America, it was conceivable that the claim would result in a benefit to Parker, and later, to his bankruptcy estate.
12 Section 1109 imposes personal liability for fiduciary breaches.
13 The district court determined Parker to have been a fiduciary and to have breached his duty, and determined the damages caused by the breach and the amount by which to set off those damages, all in the context of ruling on the Plan's claim of fiduciary breach against Parker. As discussed above, the appeal from these decisions is stayed. Nonetheless, review of the district court's dismissal of the claim against Bank of America necessitates a sort of collateral review of these conclusions, despite that they constitute some of the same conclusions we would review if appeal from the grant of summary judgment were not stayed. This state of affairs seems an odd, but inevitable, result of the "disaggregation" approach we adopt above. It is not unparalleled in bankruptcy law, however. Courts frequently decide issues relating, for instance, to codefendants of a debtor, despite that the automatic stay prevents them from deciding precisely the same issues as they might relate to the debtor. See Maritime, 959 F.2d at 1205 ("the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor").
14 The Plan is a defined contribution rather than a defined benefit plan. That is, the amount of a participant's benefits depends on the investment history of funds deposited in the participant's name. The terms of the Plan do not themselves establish the amount of the pension benefits.
15 In his appeal from the grant of summary judgment, Parker disputes both of these figures. We need not address his concerns at this time, however. For purposes of our current discussion, all that matters is that the amount of damages the Plan suffered exceeds the amount owed to Parker under the terms of the Plan. Parker does not dispute that the amount of damages is in fact larger than the amount of benefits he claims to have been wrongfully withheld.