CSA 401(K) PLAN, a retirement plan established for participating employees of Computer Software Analysts, Inc.; Levi Carey, Trustee of the CSA 401(K) Plan; Eitan Sadeh; David M. Cummings; Scott Burleigh; Richard Borgen; Melvin Reier; Faz Keyvanfar; Rose–Marie Kurian; Shri Agarwal; Ronald Herin; Clint Erikson; Lidia Gabaldon; Gerald Benenyan; Don Dellapiane; Mohammed Shahabuddin; Gerry Heath; John D. Paull; John E. Whitesel; David Boss; Thomas B. McHugh; Bartholomew W. Flaherty; Donald Munson; Ralph Lindeman; Russell Mitchell; Ralph Corbolotti; Cynthia Gates; Jim Kelly; Mike McCreary; Mike Marcellino; Jose Davila; Victor Eubanks; Alice Goldsberry; Sharon McClure; William R. Ellis; H. Michael Snyder; Ben Gearo; Marion Rice; Becky Carter; Frank Sci, Jr.; Thomas G. Paice; Kelley E. Case; Robin Hill; Harold C. Falk; John Kovak; Mark Koehler; Mark Mateson; Viriginia F. Eissler; John Corkill; Mary Hudson; Tom Merril, Plaintiffs–Appellants,

v.

PENSION PROFESSIONALS, INC.,
a California corporation,
Defendant–Appellee.

CSA 401(K) Plan, a retirement plan established for participating employees of Computer Software Analysts, Inc.; Levi Carey, Trustee of the CSA 401(K) Plan; Eitan Sadeh; David M. Cummings; Scott Burleigh; Richard Borgen; Melvin Reier; Faz Keyvanfar; Rose–Marie Kurian; Shri Agarwal; Ronald Herin; Clint Erikson; Lidia Gabaldon; Gerald Benenyan; Don Dellapiane; Mohammed Shahabuddin; Gerry Heath; John D. Paull; John E. Whitesel; David Boss; Thomas B. McHugh; Bartholomew W. Flaherty; Donald Munson; Ralph Lindeman; Russell Mitchell; Ralph Corbolotti; Cynthia Gates; Jim Kelly; Mike McCreary; Mike Marcellino; Jose Davila; Victor Eubanks; Alice Goldsberry; Sharon McClure; William R. Ellis; H. Michael Snyder; Ben Gearo; Marion Rice; Becky Carter; Frank Sci, Jr.; Thomas G. Paice; Kelley E. Case; Robin Hill; Harold C. Falk; John Kovak; Mark Koehler; Mark Mateson; Viriginia F. Eissler; John Corkill; Mary Hudson; Tom Merril, Plaintiffs–Appellants,

v.

Pension Professionals, Inc.,
a California corporation,
Defendant–Appellee.

Nos. 98–56012, 98–56353.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1999.

Decided Nov. 23, 1999.

Mark K. Drew, Pick & Boydston, Los Angeles, California, for the plaintiffs-appellants.

Cynthia A. Goodman, Robinson, Di Lando & Whitaker, Los Angeles, California, for the defendant-appellee.

Before: Goodwin, Schroeder, and Alarcon, Circuit Judges.

GOODWIN, Circuit Judge:

Levi Carey, the CEO of Computer Software Analysts, Inc. ("CSA") and a co-trustee of CSA's 401(k) employee benefit plan (the "Plan"), embezzled funds from the Plan. After the employees learned that their trustee had absconded with the funds, the Plan sued Pension Professionals, Inc. ("PPI"), in district court. The Plan appeals a summary judgment in favor of PPI. We affirm.

## FACTUAL & PROCEDURAL BACKGROUND

In July of 1991, PPI was hired by CSA to prepare financial reports and perform other third-party administrative services for the Plan. The terms of the agreement that CSA and PPI entered into (the "Service Agreement") specified that PPI was to provide its services as a third-party administrator and not as a fiduciary of the Plan. A "fiduciary" and its duties are defined in the Employee Retirement Security Income Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. Approximately six months into the job, PPI discovered what appeared to be discrepancies between the amount of funds that CSA withheld from employee paychecks for investment in the Plan and the amounts actually deposited in the employee 401(k) retirement accounts. PPI sought to ascertain whether the missing assets were located elsewhere, but suspected embezzlement by the Plan's co-trustee and chief executive officer of CSA, Levi Carey.

PPI formally notified the Plan trustees, Carey and Louis King, that the failure to deposit employees' funds into their retirement accounts violated Internal Revenue Service and Department of Labor regulations, and could be classified as both embezzlement and a breach of their fiduciary duties under ERISA. PPI further indicated that it would have to disclose the shortage on the financial reports that it was required to prepare. Carey reassured PPI that CSA intended to bring all Plan assets current, and agreed to a repayment schedule as set out in a March 31, 1993 letter to PPI.

Upon consulting with legal counsel, PPI agreed to continue its third-party administration duties for the Plan as long as Carey fulfilled certain "conditions." PPI required Carey to adhere to the repayment schedule that he outlined in his March 31, 1993 letter, and stated that PPI would need to place the following language on all employee participant (the "Plan Participants") account statements: "Contrary to the requirements of the Department of Labor and the Internal Revenue Service, a portion of the 401(k) benefits have not yet been received by the trust." PPI also required verification of Carey's compliance with the repayments (i.e., copies of deposited checks), and indicated that it would withdraw as third-party administrator of the Plan if Carey failed to follow the repayment schedule. Carey signed a letter witnessing his agreement, and deposited approximately $35,000 of previously missing Plan funds.

Carey later told PPI that he would like to modify the repayment schedule. His request was rebuffed by PPI, which again stated that it would discontinue its administrative services unless Carey honored his repayment agreement. In July of 1994, after receiving falsified financial statements from CSA, PPI resigned as third-party administrator of the Plan. PPI did

not warn law enforcement authorities or the Plan Participants of Carey's suspected embezzlement after its resignation. In July of 1998, Carey pleaded guilty to embezzling the missing funds.

On October 3, 1996, several former employees of CSA and participants in the Plan filed suit in federal court against PPI, seeking to recover the embezzled funds. The employees asserted that PPI is liable as a fiduciary under ERISA for the misappropriated money because it exercised authority and control over Plan administration after its discovery of Carey's embezzlement, and failed to take reasonable steps to warn the Plan Participants or governmental authorities of Carey's conduct as trustee.

The district court granted summary judgment in favor of PPI, concluding that PPI did not exercise any discretionary authority or control over the Plan, and therefore was not rendered a fiduciary under ERISA, 29 U.S.C. § 1002(21)(A). CSA timely filed its notice of appeal on May 14, 1998, and also filed a motion for reconsideration, which was denied on June 19, 1998. That denial was appealed on July 15, 1998, thus giving CSA two appeals relating to the district court's grant of summary judgment. Those appeals were consolidated on August 25, 1998.

## I. Fiduciary Status Under ERISA

■ Liability for breach of fiduciary duty under ERISA may be imposed only against ERISA-defined fiduciaries. *Gib-*

*son v. Prudential Ins. Co.*, 915 F.2d 414, 417 (9th Cir.1990). Although responsibility is originally vested upon the "named fiduciary" of an employee benefit plan, ERISA § 402(a), 29 U.S.C. § 1102(a), such status may be imposed on anyone who carries out fiduciary duties. ERISA § 405, 29 U.S.C. § 1105.

■ Under ERISA, a person is deemed a fiduciary if he "exercises discretionary authority or control respecting the management or administration of an employee benefit plan." *Kyle Rys., Inc. v. Pacific Admin. Serv., Inc.*, 990 F.2d 513, 516 (9th Cir.1993); 29 U.S.C. § 1002(21)(A).[1] Fiduciary liability depends not on how one's duties are formally characterized in an ERISA plan, but rather upon functional terms of control and authority over the plan. *IT Corp. v. General American Life Ins.*, 107 F.3d 1415, 1419 (9th Cir.1997). A person's "actions, not the official designation of his role, determines whether he enjoys fiduciary status," regardless of what his agreed-upon contractual responsibilities may be. *Id.* at 1418; *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir.1991).

■ While the express terms of the Service Agreement between CSA and PPI provided that PPI was not a fiduciary of the Plan, CSA contends that PPI became one by virtue of its actions subsequent to its hire. However, third-party administrators are not fiduciaries if they merely perform ministerial functions, including the preparation of financial reports.[2] *See Pa-*

---

1. 29 U.S.C. § 1002(21)(A) defines a "fiduciary" as follows:

   [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

2. Section 2509.75–8 of the Department of Labor regulations provides that persons who perform the following administrative functions will not be deemed a fiduciary with respect to an employee benefit plan:

   (1) Applications of rules determining eligibility for participation or benefits;
   (2) Calculation of services and compensation credits for benefits;
   (3) Preparation of employee communications material;
   (4) Maintenance of participant' service and employment records;
   (5) Preparation of reports required by governmental agencies;
   (6) Calculation of benefits;

*cificare v. Martin,* 34 F.3d 834, 837 (9th Cir.1994). Section 2509.75–5 of the Department of Labor Regulations provides that attorneys, accountants, actuaries, or consultants who perform their usual professional functions in rendering legal, accounting, actuarial, or consulting services to an employee benefit plan are not considered fiduciaries of the plan solely by virtue of rendering such services. Similarly, § 2509.75–8 states that persons who have no power to make decisions as to plan policy interpretations, practices or procedures but who perform specific administrative functions within a framework of policies, interpretations, rules, practices and procedures made by others are not deemed fiduciaries of the plan. The policy behind this exception to fiduciary status is to encourage professionals to provide their necessary services without fear of incurring fiduciary liability or feeling the need to charge a higher price to compensate for such risk. *Arizona Carpenters Pension Trust Fund v. Citibank,* 125 F.3d 715, 722 (9th Cir.1997).

In the instant case, PPI's functions included the preparation of quarterly and annual financial reports based upon information provided to PPI by CSA, both of which are ministerial tasks that do not give rise to fiduciary liability. *See* 29 C.F.R. § 2509.75–8. However, the question becomes: Did PPI step outside the scope of rendering administrative services and in fact exercise discretionary authority or control over the Plan when it discovered apparent embezzlement and notified Plan trustees, and thereafter conditioned its continuance as a third-party administrator upon their repayment?

CSA contends that PPI's conditions for continued employment established effective control over the Plan and constituted actual decision-making power. However, the conditions that PPI proposed were designed to assert control over its own engagement, and not to exercise discretionary authority or control over the Plan's management or administration. We have held that "[t]o become a fiduciary, the person or entity must have control respecting the management of the plan or its assets, give investment advice for a fee, or have discretionary responsibility in the administration of the plan." *Arizona,* 125 F.3d at 722 (citations omitted). In *Arizona,* the court determined that Citibank did not become a fiduciary by "devising and controlling its own reporting system, ... regularly analyzing the delinquency information, deciding whether it suggested a problem serious enough to warrant reporting to the Trustees, and determining that the delinquency information was sufficiently alarming to question the investment manager." *Id.* at 721.

In the case at bar, PPI similarly discovered financial discrepancies, brought them to the attention of the Plan trustees, insisted on placing a disclosure notice in Plan material, and informed Carey that it would discontinue its administrative services if the underfunding was not remedied. PPI explicitly noted, however, in a letter to CSA that PPI had "no authority, nor the ability, to make the needed changes to the CSA 401(k) Plan; that is your [CSA's] responsibility." Carey claims that he relinquished his discretion and decision-making power, but the facts do not bear that out. He was free to accept or reject PPI's condition that he replace the missing funds, and he had the option of retaining another third-party administrator to prepare financial reports if he so chose. His decision to deposit $35,000 back into the Plan was his alone; PPI had no authority or control to make this happen. Likewise, Carey's subsequent decision to continue his embezzlement and

---

(7) Orientation of new participants and advising participants of their rights and the options under the plan;
(8) Collection of contributions and application of contributions as provided in the plan;

(9) Preparation of reports concerning participants' benefits;
(10) Processing of claims;
(11) Making recommendations to others for decisions with respect to plan administration.

to present fraudulent reports to PPI (which led to the termination of the Service Agreement) indicates that control over the Plan was always within his hands. Thus, there has been no showing that PPI exercised actual control or discretionary authority over the Plan itself, and therefore it cannot be deemed a fiduciary under ERISA. *See Mertens v. Hewitt Associates*, 948 F.2d 607, 610 (9th Cir.1991); *Arizona*, 125 F.3d at 722.

In an analogous First Circuit case, the court held that a bank did not become an ERISA fiduciary by questioning suspicious real estate valuations, engaging an independent appraiser to investigate them, and ultimately threatening to report the unlawful practices to the authorities. *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 21 (1st Cir.1998). The court stated that as a matter of policy and principle, ERISA does not impose Good Samaritan liability. *Id.* at 21. As we noted in *Arizona*, to convert a depository into a volunteer fiduciary "would discourage depository institutions from voluntarily making information available to fund administrators, investment managers, and other fiduciaries. It would also risk creating a climate in which depository institutions would routinely increase their fees to account for the risk that fiduciary liability might attach to nonfiduciary work." *Arizona*, 125 F.3d at 722. "Imputing fiduciary status to those who gratuitously assist a plan's administrators is undesirable in a variety of ways, and ERISA's somewhat narrow fiduciary provisions are designed to avoid such incremental costs." *Beddall*, 137 F.3d at 21 (citing *Mertens v. Hewitt*, 508 U.S. 248, 262–63, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)).

CSA cites cases where persons have been held to be fiduciaries despite the presence of express contractual language rejecting the role. *See IT Corp.*, 107 F.3d at 1418–19 (administrator who interpreted plan, controlled money in plan's bank account, and who had authority to disallow benefits is a fiduciary); *Parker v. Bain*, 68 F.3d 1131, 1140 (9th Cir.1995) (exercising discretionary authority over plan assets makes one a fiduciary whether or not the plan names one as such); *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir. 1995) (corporate officer could be held liable as fiduciary on the basis of his conduct and authority even if the officer was not a named plan fiduciary); *Reich v. Lancaster*, 55 F.3d 1034, 1048 (5th Cir.1995) (authority to grant, deny or review denied claims can make one a fiduciary).

However, these cases involve fact patterns in which the alleged fiduciary exercised substantially greater discretion or control than PPI did, including the active interpretation of employee benefit plans, the management and disbursement of fund assets, the approval and rejection of claims, and the rendering of ultimate decisions regarding benefits eligibility. In contrast, PPI had no power over the management or disposition of Plan assets and was never confronted with making discretionary eligibility or claims decisions. Rather, PPI was conditioning its continued provision of third-party administrative services upon the Plan trustees bringing themselves within the bounds of the law by replacing the missing funds.

Hence, since PPI lacked discretionary authority or control over the management and administration of the Plan, it cannot be deemed a fiduciary under ERISA.

## II. Duty to Report Suspicion of Trustee Embezzlement

CSA further contends that PPI had a duty to report to the Plan Participants its suspicions regarding possible criminal breach of fiduciary duties by Carey. CSA states that the Ninth Circuit has found a broad duty to investigate suspicious activity of another fiduciary's management activities that threaten the funding of retirement benefits. *See Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir.1995). Further, the *Barker* court held that "[a] fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifical-

ly asked for the information." *Id.* at 1403 (citing *Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1300 (3d Cir.1993)). Hence, CSA argues that PPI had a responsibility to investigate the threat to the employees' funds under the Plan, and inform the Plan Participants of its findings.

 However, CSA's argument *presumes that PPI was already a fiduciary* of the Plan (or became one) and therefore had a duty to protect the beneficiaries. While it is true that an "ERISA fiduciary has an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits," *Acosta,* 950 F.2d at 619, CSA can point to no case holding that *non*-fiduciaries have a similar duty. As discussed in Part I, *supra,* PPI never did incur fiduciary status because it failed to exercise control or discretionary authority over the Plan, and therefore had no duty to warn the Plan Participants.

The Fourth Circuit has held that a third-party insurer of an ERISA plan did not have a duty to warn the beneficiaries that their eligibility for healthcare benefits was threatened by their employer's failure to pay premiums. *Coleman v. Nationwide Life Insurance Co.,* 969 F.2d 54 (4th Cir. 1992), *cert. denied,* 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993). The court asked whether the plan documents granted the insurer the "discretionary authority or responsibility to notify all Plan beneficiaries of circumstances, such as the failure of a Plan sponsor to pay policy premiums, that would affect the availability of benefits to all." *Id.* at 61. Because the plan documents did not bestow such power on the insurance company, it could not have a duty to warn as a fiduciary. *Id.* Further, the statutory language of ERISA imposes such notification duties on a plan's administrator, *i.e.,* the employer.

Similarly, in the case at bar, the Service Agreement that PPI signed contained no provision for communication between PPI and the Plan Participants, and all statements that PPI made were reviewed by CSA prior to distribution to the Plan Par-

ticipants. Thus, PPI did not have the authority to notify the Plan Participants directly, and did fulfill its responsibilities by insisting on a disclosure notice in the Plan material stating that "[c]ontrary to the requirements of the Department of Labor and the Internal Revenue Service, a portion of the 401(k) benefits have not yet been received by the trust." As a non-fiduciary, PPI's duty to warn ended there.

Hence, PPI did not fail any duty to report its suspicions of trustee embezzlement to the Plan Participants, and cannot be held liable as a fiduciary under ERISA because it did not exercise discretionary authority over the Plan.

AFFIRMED.